FIFTH DIVISION

May 5, 1998

No. 1-96-3417

ST. GEORGE CHICAGO, INC. and  ) Appeal from the

ST. GEORGE INTERNATIONAL, INC., ) Circuit Court of

  ) Cook County.

Plaintiffs-Appellants,  )

  )

v.  )

  ) No. 93 L 1576

GEORGE J. MURGES & ASSOCIATES,  )

LTD., GEORGE J. MURGES, LANE A. )

CORDAY, and JOHN T. BOWMAN,  ) The Honorable

  ) Kenneth L. Gillis,

Defendants-Appellees.  ) Judge, Presiding.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiff, St. George International, Inc., leased office space to the law firm of Murges, Bowman & Corday, Ltd. (MBC).  Following the firm's abandonment of the premises, plaintiff sued MBC for damages under the lease.  The matter was tried to a jury, which entered a general verdict in favor of plaintiff and awarded damages of $171,553.  The trial court found that the verdict was inconsistent with the jury's answers to three special inter-rogatories, which indicated that plaintiff had failed to mitigate damages, and entered judgment on the special interrogatories in favor of defendants.  Plaintiff appeals.

We reverse and remand for a new trial.

BACKGROUND

Plaintiff leased 3,755 square feet of office space to MBC in plaintiff's building located at 33 North Dearborn Street in Chicago.  Defendants George J. Murges, Lane A. Corday, and John T. Bowman each guaranteed MBC's lease obligations.  Under the ten-year lease, which commenced October 1, 1988, MBC was entitled to a rent abatement for the first 33 months.  During this period, MBC paid only its 
pro rata
 share of taxes and operating expenses.

In January 1992, Bowman and Corday left MBC and established a law firm at another location.  Murges remained in the MBC suite at 33 North Dearborn, but was unable to satisfy MBC's lease obligations.  In April 1992, Murges vacated the leased premises.   On May 12, 1992, plaintiff served MBC with a landlord's five-day notice, and on August 4, 1992, plaintiff terminated the lease for non-payment of rent, reserving its right to sue for damages under the lease.  Plaintiff subsequently filed suit for breach of contract against MBC (now known as George J. Murges & Associates, Ltd.) and the individual lease guarantors.  Defendants asserted several affirmative defenses, including the failure to mitigate damages.

Prior to trial, plaintiff moved, pursuant to section 2-1005(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(d) (West 1996)), for a summary determination that the damages formula in section 21.06 of the lease satisfied its duty to mitigate damages.  Section 21.06 states:

"In the event of the termination of this Lease by Landlord as provided for by subparagraph (a) of Section 21.02 or otherwise, Landlord shall be entitled to recover from Tenant all Monthly Base Rent and Operating Expense Adjustments accrued and unpaid for the period up to and including such termination date, as well as all other additional sums payable by Tenant hereunder.  
In addition, Landlord shall be entitled to recover as damages for loss of the bargain and not as a penalty
 the sum of (x) the unamortized cost to Landlord, computed and determined in accordance with generally accepted accounting principles, of any tenant improvements, provided by Landlord at its expense, (y) 
the aggregate sum which at the time of such termination represents the excess if any of the present value of the aggregate Monthly Base Rent and Operating Expense Adjustments at the same annual rate for the remainder of the Term as then in effect over the then present value of the then aggregate fair rental value of the Premises for the balance of the Term, immediately prior to such termination, such present worth to be computed in each case on the basis of a three percent (3%) per annum discount from the respective dates upon which rentals would have been payable hereunder had the Term not been terminated
 and (z) any damages in addition thereto, including reasonable attorneys' fees and court costs, which Landlord shall have sustained by reason of the breach of any of the covenants of this Lease other than for the payment of Rent."  (Emphasis added.)

The trial court denied plaintiff's motion for summary determination, finding in part that section 21.06 is ambiguous and must be construed against plaintiff.

At trial, plaintiff sought to recover $340,264.64 in damages: $33,069.72 for unpaid rent for April through July 1992; $78,712.92 for unamortized tenant improvements; and $228,482 for the "rent differential" pursuant to section 21.06 of the lease.

 The jury returned a verdict in favor of plaintiff, awarding damages only on plaintiff's rent differential claim in the amount of $171,553.  The jury also answered three special inter-rogatories, each indicating that plaintiff had failed to mitigate damages.  The trial court granted defendants' motion for judgment on the special interrogatories and denied plaintiff's subsequent motion for judgment notwithstanding the judgment entered on the special interrogatories or in the alternative for a new trial.  Plaintiff appeals.  155 Ill. 2d R. 301. 

   ANALYSIS

Preliminarily, we consider the motion of defendants Bowman and Corday to strike plaintiff's statement of facts as not in conformity with Supreme Court Rule "341(6)".  155 Ill. 2d R. 341(e)(6).  Defendants do not elaborate in what respect the statement of facts is improper or specify the offending portions.  Accordingly, the motion will be denied.  To the extent plaintiff has failed to provide adequate record citations or engaged in improper argument, such statements will be disregarded.  See 
Rockford Metropolitan Exposition Auditorium & Office Building Authority v. Illinois State Labor Relations Board
, 224 Ill. App. 3d 1007, 1012, 586 N.E.2d 1361 (1992).

Plaintiff requests that the judgment be reversed and the cause remanded for entry of judgment in favor of plaintiff for the full amount of its damages.  Alternatively, plaintiff asks that the jury verdict be reinstated, or that the judgment be vacated and the case remanded for a new trial.  Although plaintiff claims numerous errors by the trial court, the gravamen of its appeal is that the trial court erred when it ruled that the provisions of section 21.06 of the lease did not, as a matter of law, satisfy plaintiff's duty to mitigate damages.  We agree.

Because the case was tried under an incorrect theory of law, the appropriate action is to reverse and remand for a new trial, which we do.  
Sparling v. Peabody Coal Co.
, 59 Ill. 2d 491, 496, 322 N.E.2d 5 (1974); 
Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.
, 251 Ill. App. 3d 17, 29-30, 620 N.E.2d 1349 (1993).

A.

Section 9-213.1 of the Code provides that "a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee."  735 ILCS 5/9-213.1 (West 1996).

Plaintiff argues that the damages calculation under section 21.06 of the lease satisfies its statutory duty to mitigate damages because it assumes that a replacement tenant took possession of the premises immediately upon termination of the lease, and at a rent equal to the then prevailing market rate.  Thus, plaintiff maintains that section 21.06 removes any risk that despite reasonable efforts to mitigate, plaintiff will be unable to relet the premises.  According to plaintiff, because section 21.06 credits the tenant with the maximum amount of mitigation possible, plaintiff's actual efforts to relet the premises are irrelevant.  Defendants maintain that the trial court properly rejected this argument.

Preliminarily, and without regard to whether section 21.06 satisfies plaintiff's duty to mitigate, we consider whether, as the trial court determined, section 21.06 is ambiguous.  A contract will be deemed ambiguous if its language is susceptible of more than one reasonable interpretation.  
Farm Credit Bank of St. Louis v. Whitlock
, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991); 
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991).
  
A contract is not "ambiguous" merely because the parties disagree as to its meaning.  
Ford v. Dovenmuehle Mortgage, Inc.
, 273 Ill. App. 3d 240, 244, 651 N.E.2d 751 (1995).  On appeal, this court considers the issue 
de novo
, and makes an independent review of the contract to determine whether there is only one fair and reasonable interpretation.  
Ford
, 273 Ill. App. 3d at 244-45.

Section 21.06 provides that upon termination of a defaulting tenant's lease, plaintiff is entitled to recover the following amounts:  (1) unpaid rent and operating expenses through the date of termination of the lease; (2) unamortized cost of tenant improvements; (3) an amount which plaintiff has termed "rent differential"; and (4) attorney fees and courts costs.  

It is the third component of damages, the so-called "rent differential", that is at issue.  This component of damages is described in the lease as:

"[T]he aggregate sum which at the time of such termination represents the excess if any of the present value of the aggregate Monthly Base Rent and Operating Expense Adjustments at the same annual rate for the remainder of the Term as then in effect over the then present value of the then aggregate fair rental value of the Premises for the balance of the Term, immediately prior to such termination, such present worth to be computed in each case on the basis of a three percent (3%) per annum discount from the respective dates upon which rentals would have been payable hereunder had the Term not been terminated ***."

Plaintiff argued before the circuit court, and we agree, that the foregoing lease provision entitles the landlord to recover the present value of the lease rent over the unexpired lease term, 
less the present value of the fair rental value, 
i.e.
, the fair market rent, over the unexpired lease term.  We can discern no other reasonable interpretation to this contract language and defendants offer none.  

We next consider whether section 21.06 satisfies plaintiff's statutory duty to mitigate damages.  Because this raises a question of law, review by this court is 
de novo
.  
Oak Park Trust & Savings Bank v. Village of Mt. Prospect
, 181 Ill. App. 3d 10, 19, 536 N.E.2d 763 (1989).

The purpose of section 9-213.1 of the Code is to require landlords to make reasonable efforts to relet the premises following a tenant's departure, rather than allowing the premises to stand vacant and the landlord to collect rent in the form of damages.  
M X L Industries, Inc. v. Mulder
, 252 Ill. App. 3d 18, 31, 623 N.E.2d 369 (1993); 
J M B Properties Urban Co. v. Paolucci
, 237 Ill. App. 3d 563, 568, 604 N.E.2d 967 (1992).  Theoretically, a defaulting tenant's exposure can be virtually extinguished if the landlord is successful in reletting the premises immediately upon the tenant's departure and at the same lease rate.  However, such a result is unlikely where long-term commercial leases, subject to market fluctuations, are involved.  For example, a glut of office space may cause lease rates in an area to drop, thus precluding a landlord, despite diligent efforts, from reletting the premises at the same rate.  Thus, the best result that a defaulting tenant can ever expect is that the landlord is successful in immediately reletting the premises at the then prevailing market rate.  

Section 21.06 of the lease makes this best case scenario a certainty by limiting plaintiff's claim for lost rent to the excess, if any, of the lease rate over the market rate for the unexpired lease term.  Thus, section 21.06 accomplishes precisely what the statute intended, but without any of the risk to defendants that plaintiff's otherwise reasonable efforts to relet might nonetheless prove unsuccessful.

The circuit court, however, determined that section 21.05 of the lease addresses mitigation of damages, not section 21.06, and that the former is contrary to section 9-213.1.  Section 21.05 states in relevant part:

"In the event Landlord terminates the right of Tenant to possession of the Premises without terminating this Lease as aforesaid, Landlord may, but shall be under no obligation to, relet the Premises or any part thereof for the account of Tenant ***."

We agree that section 21.05 addresses mitigation of damages.  However, this section applies only where a tenant is dispossessed of the premises.  Section 21.06 governs the situation present here, where the landlord has terminated the lease following the tenant's abandonment of the premises.  Thus, whether section 21.05 is contrary to law is irrelevant to our determination of the legal effect of section 21.06. 

Based on the foregoing, we conclude that the damages calculation set out in section 21.06 of the lease satisfies plaintiff's statutory duty to mitigate damages, but only as to the period covered by plaintiff's rent differential claim, 
i.e.
, the post-termination period
 from August 4, 1992, through the balance of the lease term.  As to this period, plaintiff's actual efforts in mitigation are irrelevant and should not have been an issue at trial.  Rather, the only factual issue that should have been tried relative to plaintiff's rent differential claim was the "fair rental value" at the time of termination of the lease.

As to the four-month pre-termination period beginning in April, 1992, when Murges vacated the premises and purportedly ceased paying rent, section 21.06, by its own terms, does not apply.  Thus, as to this period, for which plaintiff seeks the full rent of approximately $8,260 per month, plaintiff must demonstrate actual reasonable measures to mitigate damages.  We will not speculate as to what constitutes "reasonable measures" during the period immediately following a tenant's abandonment of premises covered by a long-term commercial lease.  That determination is best made by the trier of fact.  See 
M X L Industries, Inc.
, 252 Ill. App. 3d at 31.

B.

We consider three additional issues which are likely to arise on remand.  The first issue is whether, as defendants contend, a landlord's failure to mitigate damages precludes any recovery by the landlord or, whether, as plaintiff argues, the failure to mitigate merely reduces the landlord's damage award.  Defendants cite the second district case of 
Snyder v. Ambrose
, 266 Ill. App. 3d 163, 639 N.E.2d 639 (1994), in support of their position.

In 
Snyder
, the landlord sued his tenant for unpaid rent.  The trial court granted the landlord's motion 
in limine
 to bar defendant from raising any affirmative defense, since tenant had failed to file an answer.  During trial, the tenant sought to question plaintiff as an adverse witness as to the efforts plaintiff made to mitigate damages, arguing that the failure to mitigate is not an affirmative defense.  The trial court sustained plaintiff's objection, ruling that section 2-613 of the Code (735 ILCS 5/2-613 (West 1992)) bars any defense, affirmative or not, which would likely take the opposite party by surprise if not pleaded.  The landlord prevailed in his claim for rent.  On appeal, the second district appellate court reversed:

"Not requiring evidence, let alone proof, regarding the plaintiff's mitigation of damages was prejudicial error.  By statute, a landlord has a duty to mitigate the damages recoverable against a defaulting lessee ***. To hold that the plaintiff landlord would be surprised to have to prove something which, by statute, he or she owes an affirmative duty to do strains credibility."  
Snyder
, 266 Ill. App. 3d at 165.

Thus, the 
Snyder
 court departed from the general rule that mitigation of damages must be pleaded and proved by the defendant (see, 
e.g.
, 
Rozny v. Marnul
, 43 Ill. 2d 54, 73, 250 N.E.2d 656 (1969)) and held that the burden of establishing mitigation should be shouldered by the plaintiff landlord.  
Snyder
, 266 Ill. App. 3d at 166.  
The court went on to state that "[b]ecause 
proof of mitigation was necessary for the plaintiff to prevail
 and no evidence was presented relative thereto", reversal of the judgment was warranted and the cause was remanded for further proceedings.  
Snyder
, 266 Ill. App. 3d at 166.  
Snyder
 has been construed as establishing a burden upon the landlord to prove mitigation of damages as a "prerequisite" to recovery.  
St. Louis North Joint Venture v. P & L Enterprises, Inc.
, 116 F.3d 262, 265 (7th Cir. 1997).  

We agree with the 
Snyder
 decision that the landlord is in the best position to come forward with evidence of its reasonable efforts in mitigation and should therefore bear the burden of proof.  However, to the extent 
Snyder
 may be read as requiring such proof as a "prerequisite" to recovery, we disagree.  

Generally, the doctrine of mitigation of damages "imposes a duty upon the injured party 'to exercise reasonable diligence and ordinary care in attempting to minimize the damages after injury has been inflicted.'"  
Grothen v. Marshall Field & Co.
, 253 Ill. App. 3d 122, 128, 625 N.E.2d 343 (1993), quoting Black's Law Dictionary 904 (5th ed. 1979).  Thus, where an injured party, through his own negligence or wilfulness, permits his loss to be unnecessarily enhanced, the increased loss will be borne by the injured party.  
Culligan Rock River Water Conditioning Co. v. Gearhart
, 111 Ill. App. 3d 254, 258, 443 N.E.2d 1065 (1982).  
In other words, losses which could have been reasonably avoided are not recoverable.  
Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione
, 144 Ill. App. 3d 934, 941, 494 N.E.2d 795 (1986); 
Culligan
, 111 Ill. App. 3d at 258.

Although the doctrine of mitigation of damages is said to impose a "duty" upon the injured party, this is not entirely accurate.  As explained in the Restatement (Second) of Contracts:

"It is sometimes said that it is the 'duty' of the aggrieved party to mitigate damages, but this is misleading because he incurs no liability for his failure to act.  The amount of loss that he could reasonably have avoided by stopping performance, making substitute arrangements or otherwise is simply subtracted from the amount that would otherwise have been recoverable as damages."  
Restatement (Second) of Contracts §350, Comment b., at 127 (1979).  

See also 
Wired Music, Inc. v. Clark
, 26 Ill. App. 2d 413, 416, 168 N.E.2d 736 (1960).  Thus, mitigation concerns the 
measure
 of damages, not the legal right to recover damages.  

The principal that the failure to mitigate damages acts merely to reduce the damages otherwise recoverable has been applied in cases involving a landlord's action for unpaid rent. 
 
Scheinfeld v. Muntz TV, Inc.
, 67 Ill. App. 2d 8, 16-7, 214 N.E.2d 506 (1966); 
Hinde v. Madansky
, 161 Ill. App. 216, 220 (1911).  See also 
Wanderer v. Plainfield Carton Corp.
, 40 Ill. App. 3d 552, 556, 351 N.E.2d 630 (1976) (applying the contract measure of damages in cases of breach of lease).

Although 
Scheinfeld
, 
Hind
, and 
Wanderer
 all predate section 9-213.1, there is nothing in the statute which suggests that the legislature intended to depart from the common law and work a forfeiture of the landlord's right of recovery. 

Accordingly, on remand, it is plaintiff's burden to come forward with evidence demonstrating that it took reasonable measures to mitigate damages during the pre-termination period.  Should it be determined that plaintiff failed to so mitigate, plaintiff's damage claim for this period will not be barred.  Rather, the damages otherwise recoverable will merely be reduced.

C.

The second issue we consider which is likely to arise on remand concerns the October, 1992, sale of plaintiff's building at 33 North Dearborn.  At trial, plaintiff submitted a memorandum of law in support of its position that the subject sale did not affect the damages it may recover, along with a proposed jury instruction reflecting the same.  The trial court refused the instruction but never determined what effect, if any, the sale had on plaintiff's claims.  Thus, defendants' counsel argued to the jury that, based on "common sense", plaintiff cannot claim any damages after the building was sold.  

Plaintiff contends, and we agree, that the trial court erred by allowing the jury to decide what is unquestionably a matter of law involving, at a minimum, an interpretation of the purchase and sale documents and in particular, the "Assignment and Assumption of Leases and Contracts" referenced in the record and the briefs.  
Because this issue was never fully considered by the trial court, on remand the court is instructed to make a specific finding as to the legal effect of the sale of the building on plaintiff's claims for damages.

D.

Finally, plaintiff asserts that defendants' jury demand should have been stricken.  Although the lease agreement contains a jury waiver provision, plaintiff failed to object to the jury demand until the day of trial, over three years after the demand was filed, and after the court spent several weeks considering motions 
in limine
 and other pre-trial matters.  Where, as here, a party's conduct is inconsistent with a contractual term, a waiver of such provision may be inferred.  
Barker v. Leonard
, 263 Ill. App. 3d 661, 663, 635 N.E.2d 846 (1994); 
Wagner Excello Foods, Inc. v. Fearn International, Inc.
, 235 Ill. App. 3d 224, 232, 601 N.E.2d 956 (1992).  Accordingly, the trial court did not err in refusing to strike defendants' jury demand.  

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for a new trial consistent with this court's rulings.

Reversed and remanded.