2023 IL App (1st) 221454

THIRD DIVISION
December 20, 2023

No. 1-22-1454

LADD KULHANEK and CLAUDIA KULHANEK,    )    Appeal from the
)    Circuit Court of
Plaintiffs-Appellees, )    Cook County
)
v.    )    No. 2020 M1-705804
)
ERNEST CASPER,    )    Honorable
)    Eileen M. O'Connor,
Defendant-Appellant. )    Judge, Presiding

JUSTICE D. B. WALKER delivered the judgment of the court, with opinion.
Justice Lampkin and Justice Van Tine concurred with the judgment and opinion.

**OPINION**

¶ 1    Defendant Ernest Casper[1] appeals the trial court's judgment granting plaintiffs' motion for a new trial. On appeal, defendant contends that (1) the jury did not render a legally inconsistent verdict, where the evidence at trial reasonably supported a finding that defendant did not breach his obligation under the lease and (2) the trial court erred in granting plaintiffs' motions *in limine* barring defendant from presenting any evidence of plaintiffs' failure to mitigate damages. For the following reasons, we affirm the trial court's judgment granting a new trial. On remand, the parties may present evidence regarding plaintiffs' reasonable efforts to mitigate their damages.[2]

---

[1]Several documents in the record refer to defendant as "Earnest Casper." However, the briefs on appeal, and defendant himself, spell his first name "Ernest."

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 2                                    I. BACKGROUND

¶ 3      Plaintiff Ladd Kulhanek is the beneficial owner of commercial property located on 6033-35 North Cicero Avenue in Chicago, Illinois. Plaintiff Claudia Kulhanek is the co-manager of the premises, and defendant was a tenant. On August 28, 2020, plaintiffs filed a breach of contract complaint alleging that defendant, who leased the premises on a month-to-month basis, had failed to pay rent since 2012. Plaintiffs sought "a money judgment against the defendant for $108,000, representing rent due for the period of 12-1-15 to 12-31-20 together with reasonable attorney fees, as per provision of the original lease and court costs as per statute."

¶ 4      The parties filed a bystander's report in lieu of a report of proceedings. The report stated that on June 8, 2022, plaintiffs filed four motions *in limine*. However, only the first, second, and fourth motions are detailed in the report. These motions sought to bar any reference to defendant's age of 94 years because it would be prejudicial (motion one), as well as references to the lapse of time between defendant's default and plaintiffs' initiation of their forcible entry and detainer action (motion two), and plaintiffs' pre-possession duty to mitigate damages (motion four).

¶ 5      The bystander's report did not provide the trial court's ruling on the first motion. The court granted the second and fourth motions. Regarding the second motion, the court found that the lapse of time was irrelevant to the issue of mitigation since plaintiffs had five years under the statute to file suit. As for the fourth motion, the trial court determined that plaintiffs had no duty to mitigate until they had possession of the premises, and plaintiffs were not seeking damages for the period after they regained possession.

¶ 6      The trial court also found that a question of fact existed as to whether and when defendant tendered possession of the premises to plaintiffs. Therefore, the court reserved judgment on whether the jury would be instructed on mitigation until the close of the evidence.

¶ 7    The trial commenced on June 9, 2022. At trial, Claudia testified that her parents had rented the premises to defendant beginning in 1962. Defendant socialized with her parents, and Claudia had known him "for a long period of time." The last written lease executed by her parents and defendant was a three-year lease signed in 1990. A copy of the executed lease was admitted into evidence. The lease provided that defendant "shall pay" rent of $1300 per month and that "[i]n consideration of the mutual covenants and agreements herein stated," the lessor would lease the premises to defendant. The lease further provided that if defendant retained possession of the premises past the lease term, the lessor had the option to serve written notice upon defendant "that such holding over constitutes *** [the] creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified ***."

¶ 8    Approximately 30 to 60 days before expiration of the written lease, defendant informed Claudia that he did not want to sign a new lease. Instead, he "wanted to go month-to-month." They entered into an oral agreement and defendant "continued to pay rent for years."

¶ 9    Defendant ceased paying rent in 2011 or 2012. On July 7, 2020, Claudia served a "5 Day Notice to Quit" on defendant. The notice stated that defendant owed $280,800 in rent, and unless payment is made within five days, defendant's lease would be terminated. The notice was entered into evidence, along with a handwritten ledger Claudia used in the regular course of business to document defendant's rent payments.

¶ 10    On July 17, 2020, defendant sent Claudia a handwritten note stating that he had "relinquished" the rented commercial premises and "the owners can dispose of all [his] belongings *** left in the storefront." Claudia testified that after defendant sent the note, he was observed on the premises "every day or every other day, for a few hours per day." The note was admitted into evidence. Plaintiffs filed a breach of contract complaint against defendant on August 28, 2020.

¶ 11    On October 30, 2020, defendant was personally served on the premises with the complaint and summons. Since he continued to occupy the premises, Claudia obtained an eviction order on December 23, 2020. Defendant gave Claudia the keys to the premises on January 8, 2021. He left equipment, including "barber chairs, partitions, heads with wigs, head mannequins, cabinets, couch, and a cash register," which plaintiffs removed after receiving the keys to the property.

¶ 12    On cross-examination, defense counsel showed Claudia a "Notice of Termination of Tenancy" dated March 13, 2013. The notice stated that defendant owed plaintiffs $80,000 in rent pursuant to an oral month-to-month lease "for the period commencing January 1, 2010 through the present." The notice further stated that if no payment is made within five days, defendant's "right to possession under the lease of said premises will be terminated." Claudia acknowledged that she had signed the notice, and it was her intent that defendant "leave the premises since he had not paid the rent." She did not follow through with the notice, however, because "it was hard to evict 'Uncle Ernie' as he was a friend of the family." Claudia also testified that "Norma Kulhanek" was the name on the tax bill for the property, even though Norma had died in 2009.

¶ 13    Ladd testified that he was the property manager for the property, and he became owner of the property after his mother's death in 2009. He had "not gotten around to changing" the name on the tax bill from his mother's name, even though she died in 2009. Ladd testified that defendant last paid rent in February 2012, in the amount of $600. Defendant ceased operating his business on the premises in the "early 2000's" but continued to pay the gas bill until 2021. Ladd and his wife visited the property approximately five or six times a year.

¶ 14    Ladd testified that he and his wife own other rental property and that he had filed eviction actions and hired attorneys to prosecute those actions. When asked if more than one year had passed before he proceeded with those evictions, he answered that "[it] had not." Defendant's

counsel presented a 2015 complaint filed by the city of Chicago which alleged, in part, that plaintiffs failed to register the premises as vacant and/or abandoned. When asked about the complaint, Ladd stated that he did not remember it.

¶ 15    Defendant did not testify. At the close of the evidence, the trial court ruled that it would not instruct the jury on mitigation because "there was no evidence that Defendant tendered possession at any time during the period Plaintiff sought damages (2015-2020) to trigger any duty to mitigate." The court reiterated that plaintiffs had no pre-possession duty to mitigate. The court struck three instructions pertaining to mitigation.

¶ 16    The jury returned a verdict form with answers to special interrogatories. The jury answered as follows:

>    "Did Ladd Kulhanek and Claudia Kulhanek prove there was a contract?" Yes.
>
>    "Was there a month-to-month lease that existed from August 2015 onward?" Yes.
>
>    "Did Ladd Kulhanek and Claudia Kulhanek prove they performed their obligations under the contract?" Yes.
>
>    " 'Did Ladd Kulhanek and Claudia Kulhanek prove Ernest Casper breached the contract by his failure to perform his obligations under the contract?" No.

Since the jury answered no, they did not consider whether plaintiffs proved they sustained damages resulting from defendant's breach.

¶ 17    On June 24, 2022, plaintiffs filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial. Therein, plaintiffs relied on the jury's finding pursuant to the special interrogatories that plaintiffs proved the existence of a contract and that a month-to-month lease existed between the parties "from August 2015 onward." Since the evidence showed that defendant "remained on the premises as a month-to-month tenant until 1-08-21" and had not paid rent since

February 2012, plaintiffs argued that the jury's verdict that defendant did not breach the contract was "[u]nreasonable and arbitrary" and "totally inconsistent with the facts presented."

¶ 18    After briefing and argument by the parties, the trial court concluded that:

"Defendant's argument that the jury did not believe the Plaintiff's testimony is contradicted by the jury's answers to the special interrogatories. Based exclusively on the Plaintiff's testimony, the jury found that there was a valid month to month oral contract from 2015-onward and that Plaintiff performed their obligations under it. Notwithstanding, the jury found that the defendant did not breach the 2015 month to month lease even though it was undisputed that Defendant never made any payments for 2015 onward. Defendant cited absolutely no evidence to establish that any payment was made for this period. *** Neither party alleged nor put on evidence of any lease violation except for Defendant's failure to pay in 2015-2020. In short, not only was such evidence on breach unrebutted; it was undisputed. As such, once the jury determined that there was a valid contract and that Plaintiffs performed, their verdict, if based upon the evidence, required that they find that Defendant breached."

The trial court concluded that it was "left with no choice but to order a new trial," where "the jury's finding that Defendant did not breach was contrary to the manifest weight of the evidence."

¶ 19    Defendant filed an interlocutory appeal under Illinois Supreme Court Rule 306(a)(1) (eff. Oct. 1, 2020), which allows appeals from the circuit court's order granting a new trial.

¶ 20                                  II. ANALYSIS

¶ 21    Defendant contends that the trial court erred in finding that the jury's verdict was against the manifest weight of the evidence and granting a new trial. " ' " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of

the jury are unreasonable, arbitrary and not based upon any of the evidence.' " ' " *Redmond v. Socha*, 216 Ill. 2d 622, 631-32 (2005) (quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999), quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992), quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)). A reviewing court will not reverse the trial court's determination unless the trial court abused its discretion. *Id.* at 632.

¶ 22    The jury in this case answered special interrogatories and rendered a verdict in favor of defendant on plaintiffs' breach of contract claim. Plaintiffs argued in their posttrial motion that the jury's verdict was "totally inconsistent" with its special finding that the parties entered into a month-to-month lease and plaintiffs performed under the contract. In its order, the court noted that although the jury found a valid lease existed "from 2015 onward," and plaintiffs performed their obligations under the lease, the jury inexplicably concluded that defendant did not breach the lease, even though he never paid rent during that time. The court found that the jury's general verdict was contrary to its special finding that a valid lease existed between the parties.

¶ 23    On appeal, defendant argues that a reasonable hypothesis exists so that the jury's special finding can be construed consistently with the general verdict. Therefore, "they are not 'absolutely irreconcilable,' and the special finding will not control." As such, the jury's verdict was not against the manifest weight of the evidence.

¶ 24    Special interrogatories test the general verdict against the jury's findings on one or more ultimate issues of fact. *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). They are governed by section 2-1108 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1108 (West 2020)). *Simmons*, 198 Ill. 2d at 555. "When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. The best indicator of such intent is the language of the statute, given its plain and ordinary meaning.

*Id.* "When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law." *Id.*

¶ 25    The trial in this case took place on June 9, 2022. Therefore, the amended version of section 2-1108 applies. See 735 ILCS 5/2-1108 (West 2020) (noting that the amendment "applies only to trials commencing on or after January 1, 2020"). Although neither the parties nor the trial court cited this provision, it is relevant here. Section 2-1108 provides, in pertinent part, that:

> "Unless the nature of the case requires otherwise, the jury shall render a general verdict. Within the discretion of the court, the jury may be asked to find specially upon any material question or questions of fact submitted to the jury in writing. *** When any special finding of fact is inconsistent with the general verdict, the court shall direct the jury to further consider its answers and verdict. If, in the discretion of the trial court, the jury is unable to render a general verdict consistent with any special finding, the trial court shall order a new trial." *Id.*

¶ 26    Courts generally regard the word "shall" in a statute as meaning "mandatory." *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978). Pursuant to the plain language of section 2-1108, if a special fact finding is inconsistent with the general verdict, the trial court must direct the jury to further consider its answers and verdict. If, in the court's discretion, it finds that the jury is unable to render a general verdict consistent with any special finding, it must order a new trial. According to the clear terms of section 2-1108, the trial court must consider the jury's inability to reach a consistent verdict after redirection when ordering a new trial under this provision. It follows that, for the trial court to grant a new trial on this basis, it must address the inconsistency issue while the jury remains empaneled.

¶ 27    Although section 2-1108 sets forth the trial court's responsibility when a special finding is inconsistent with the general verdict, attorneys should also examine the jury's answers for inconsistencies with the verdict before the jury is discharged from the case. If the trial court fails to notice any inconsistency at that time, attorneys should alert the court or risk forfeiting any objection to an inconsistency between the jury's special answers and the general verdict. See also *Ris v. Advocate Health & Hospitals Corp.*, 2023 IL App (3d) 220221-U, ¶ 67 (finding that "[a] party's failure to object while the jury is still present in the courtroom results in the party's forfeiture of an objection to an alleged inconsistency between the special interrogatory and the general verdict").[3]

¶ 28    In this case, the parties forfeited consideration of any claims regarding inconsistencies between the jury's special answers and the general verdict. Apparently, the trial court did not notice the inconsistency while the jury was empaneled, and plaintiffs first raised the issue in a posttrial motion, which they filed 15 days after the jury rendered its verdict. As a result, the trial court did not submit the issue to the jury for its further consideration. Since the trial court must take the jury's reconsidered findings into account when determining whether a new trial is warranted, and it did not do so, it could not grant a new trial on this basis.

¶ 29    Notwithstanding this forfeiture, the trial court also determined that the jury's verdict was against the manifest weight of the evidence and granted plaintiffs' motion for a new trial, accordingly.

¶ 30    One of the primary issues at trial was whether the parties had entered into a valid lease. A lease is a contract that gives rise to the landlord-tenant relationship. *Midland Management Co. v.*

---

[3]Since *Ris* was filed in 2023, it may be cited as persuasive authority pursuant to Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021).

*Helgason*, 158 Ill. 2d 98, 103 (1994). Therefore, landlord-tenant relations are governed by the same rules that govern contracts. *Id.* By executing the lease, the tenant has a contractual obligation to pay rent so long as it is in possession of the premises. *Greggs USA, Inc. v. 400 East Professional Associates, LP*, 2021 IL App (1st) 200959, ¶ 16. This obligation exists, even if the landlord breaches a covenant of the lease. *Id.*

¶ 31    The undisputed testimony at trial showed that the parties agreed to an oral month-to-month lease in 1993 and that defendant was regularly observed at the premises through 2020, his equipment was on the premises, he was personally served with the complaint there on October 30, 2020, and he paid the gas bill until 2021. Defendant also did not give plaintiffs the keys to the premises until January 8, 2021. See *Meyer v. Cohen*, 260 Ill. App. 3d 351, 362 (1993) (finding that the tenant's failure to return the keys after the lease term may have indicated a desire "to retain possession of the apartment on a month-to-month basis"). The evidence further showed that defendant ceased paying rent in 2011 or 2012. Nothing in the lease set forth an alternative to the required rent payment, and defendant presented no evidence showing that the parties agreed to a different contract in which defendant promised to provide services instead of paying rent.

¶ 32    Despite evidence of defendant's continuous possession of the premises and his failure to pay rent, the jury found that defendant did not breach the lease. The trial court concluded that "once the jury determined that there was a valid contract and that Plaintiffs performed, their verdict, if based upon the evidence, required that they find that Defendant breached." Therefore, it found that the jury's verdict was "contrary to the manifest weight of the evidence." The trial court properly sets aside the verdict and orders a new trial if the verdict is against the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 454. We find that the trial court did not abuse its discretion in granting a new trial.

¶ 33    We now address defendant's contention that the trial court erred in granting plaintiffs' motions *in limine*, as this issue is likely to arise on remand. See *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶ 64 (addressing the plaintiff's other contentions where the issues may arise again on retrial). We review the court's ruling on a motion *in limine* for abuse of discretion. *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 266 (2005). The trial court abuses its discretion when it acts arbitrarily, exceeds the bounds of reason, ignores recognized principles of law, or if no reasonable person would take the court's position. *Id.*

¶ 34    The motions granted by the trial court precluded any mention of the lapse of time between defendant's default and plaintiffs' initiation of their eviction action or any reference to plaintiffs' "pre-possession duty" to mitigate damages. Defendant argues that plaintiffs have a statutory obligation to mitigate damages, and evidence of plaintiffs' delay in seeking an eviction order is relevant to the mitigation issue. As such, defendant should be allowed on remand "to elicit testimony, introduce evidence, and address the jury on the time elapsed between the alleged default date and filing date, as well as on Plaintiffs' efforts to mitigate."

¶ 35    Under common law, a plaintiff asserting a breach of contract claim cannot recover damages it could have reasonably avoided. *Boyer v. Buol Properties*, 2014 IL App (1st) 132780, ¶ 67. "In other words, where an injured party permits [its] loss to be unnecessarily enhanced through [its] own negligence or willfulness, that increased loss will be borne by the injured party." *Id.* Section 9-213.1 of the Code provides that "a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee." 735 ILCS 9-213.1 (West 2020). Section 9-213.1 was enacted "to ensure that landlords have the same duty to mitigate damages that other contracting parties have." *Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶ 17.

¶ 36    Generally, the defendant must plead the plaintiff's failure to mitigate damages as an affirmative defense, and the defendant bears the burden of proof. *Boyer*, 2014 IL App (1st) 132780, ¶ 67. However, since the landlord is in the best position to present evidence of its reasonable efforts to mitigate losses, the landlord bears the burden of proof under section 9-213.1. *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 293 (1998). Mitigation in this context "concerns the *measure* of damages, not the legal right to recover damages." (Emphasis in original.) *Id.* If the landlord fails to satisfy its burden to mitigate, recovery of damages will not be barred but merely reduced. *Id.* at 293-94.

¶ 37    In the case at bar, the trial court granted plaintiffs' motion *in limine* to exclude any reference to plaintiffs' duty to mitigate before defendant returned the keys to the premises in January 2021. The court found that plaintiffs had no duty to mitigate until they received possession of the premises, and plaintiffs only requested damages for the period before they retained possession. As support, the court cited, as persuasive authority, *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18 (1993), *St. George Chicago*, 296 Ill. App. 3d 285 (1998), and *Block 418, LLC v. Uni-Tel Communications Group, Inc.*, 398 Ill. App. 3d 586 (2010), as well as *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2021 IL App (1st) 210119-U. We note that, subsequent to the trial court's order, *2460-68 Clark* was filed as an opinion.

¶ 38    In all of these cases, however, the landlord filed an eviction action shortly after sending the notice of default to the tenant. In this case, defendant made his last payment in February 2012 for $600. Plaintiffs sent defendant the first notice of termination on March 1, 2013, which stated that defendant owed $80,000 as the amount due under the lease from "January 1, 2010 through the present." However, in contrast to the cases relied on by the trial court, Claudia acknowledged that

she did not follow through with the notice, thus allowing defendant to remain on the premises for seven more years without paying rent.

¶ 39 Furthermore, plaintiffs understood that they could remove defendant from the premises for not paying rent. On July 17, 2020, plaintiffs sent defendant a second notice, stating that "there is now due the undersigned Landlord the sum of $280,800 as rent for the premises ***." Plaintiffs then filed a forcible detainer and eviction action on August 28, 2020, and obtained an eviction order on December 23, 2020. Defendant gave Claudia the keys to the premises on January 8, 2021. Plaintiffs cannot rely on the cited cases to escape their burden to mitigate, and increase their damages in the process, when it was plaintiffs' failure to remove defendant from the premises in 2013 that caused defendant to be in possession of the premises from 2015 through 2020.

¶ 40 Plaintiffs sought money damages representing the rent due from December 1, 2015 to December 31, 2020. Damages are an essential element of plaintiffs' breach of contract claim, which they must prove in order to prevail. *In re Illinois Bell Telephone Link-Up II & Late Charge Litigation*, 2013 IL App (1st) 113349, ¶ 19. Defendant properly raised plaintiffs' lack of mitigation as an affirmative defense below, and the burden is on plaintiffs, as the landlord, to show they took reasonable measures to mitigate their damages. *St. George Chicago*, 296 Ill. App. 3d at 293. The trial court's decision to preclude this evidence contradicted established principles of contract law. Therefore, the court abused its discretion in granting the motions *in limine*. We agree with defendant that evidence concerning plaintiffs' efforts at mitigation and their delay in filing the eviction action is relevant to their breach of contract claim. On remand, defendant should have an opportunity to present evidence and question plaintiffs on this issue.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the trial court and remand the cause

for a new trial.

¶ 43    Affirmed and remanded.

_____

*Kulhanek v. Casper*, **2023 IL App (1st) 221454**

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-M1-705804; the Hon. Eileen M. O'Connor, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Daniel Quarfoot and Stephen Lindberg, of Chicago Volunteer Legal Services, of Chicago, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Christopher Acuna, of Law Offices of Christopher Acuna, Ltd., of Chicago, for appellee. |

_____