STREAMS CONDOMINIUM No. 3 ASSOCIATION, Plaintiff-Appellant, v. LINDA J. BOSGRAF, Defendant-Appellee.

Second District   No. 2—90—1317

Opinion filed October 7, 1991.

Michael C. Kim and David M. Bendoff, both of Arnstein & Lehr, of Chicago, for appellant.

Janet L. Watson, of Watson & Brown, of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Streams Condominium No. 3 Association (Streams), appeals from an order of the circuit court of Du Page County dismissing its forcible entry and detainer action against defendant, Linda Bosgraf, on the basis that it was barred under the doctrines of collateral estoppel and election of remedies. Streams argues on appeal that the circuit court erred by granting the motion to dismiss. We reverse and remand.

Streams filed its complaint in forcible entry and detainer on August 27, 1990. Streams alleged in the complaint that it was owed $7,522.38 in assessments for a condominium unit at 1479 County Farm Road in Wheaton and it was entitled to possession of the unit. The original defendants were the tenant, David Barbur, and the land trustee which held legal title to the unit. Neither is a party to this appeal. Shortly after the complaint was filed, Bosgraf, the sole beneficiary of the land trust holding title to the unit, was substituted as a defendant for the land trustee.

Bosgraf filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) in which she made the following factual allegations. On July 30, 1979, Bosgraf entered into a contract for the installment sale of the condominium unit at issue in the case to Douglas Scott, and possession of the unit was transferred to Scott. The contract provided that Scott would pay all condominium assessments made by Streams. Scott subsequently transferred his interest in the unit to DTS-2, an Illinois limited partnership. This was a violation of his installment sales contract with Bosgraf.

In November 1985, Scott and DTS-2 both filed petitions for reorganization pursuant to chapter 11 of the Bankruptcy Code (11 U.S.C. §1101 et seq. (1982)) with the United States Bankruptcy Court for the

Northern District of Illinois. The condominium unit was administered as an asset of the DTS-2 bankruptcy case. Streams subsequently filed a motion for relief from the automatic stay. (11 U.S.C. §362 (Supp. V 1987).) In connection with this motion, Streams and DTS-2 agreed to the entry of an order requiring DTS-2 to pay the condominium assessments as they came due plus $125 per month on the past-due assessments. The bankruptcy court entered the order on May 4, 1987.

Bosgraf further alleged in the motion to dismiss that DTS-2 defaulted almost immediately on its obligation to make the above payments and Streams did nothing to enforce the order. As a result, the amount of assessments owed on the unit increased from $4,254.59 in May 1987 to $7,522.38 as of the date the complaint was filed. Streams had a priority administrative claim against DTS-2 in the bankruptcy case which, on information and belief, would result in full payment of the past-due assessments. Bosgraf stated in the motion that she relied to her detriment on the failure of Streams to notify her that it did not intend to enforce the May 4, 1987, bankruptcy court order and that allowing Streams to proceed against her would result in double recovery. She therefore contended that the claim against her was barred under the doctrine of election of remedies. Bosgraf signed a statement at the end of the motion certifying that the statements therein were true except those based upon information and belief, which she still believed to be true.

Streams filed a response to the motion in which it alleged that the May 4, 1987, bankruptcy court order addressed only assessments that were due prior to the time the bankruptcy petition was filed while the forcible entry and detainer complaint sought recovery of both prepetition and post-petition assessments. Streams also alleged in the response that the bankruptcy trustee of the DTS-2 estate had recently obtained an order of abandonment from the bankruptcy court for the condominium unit thereby removing it from the bankruptcy court's exclusive jurisdiction.

The circuit court held a hearing on the motion to dismiss on October 26, 1990. The court granted the motion on the basis that plaintiff's complaint was barred under the doctrines of collateral estoppel and election of remedies. Streams now appeals.

A motion to dismiss pursuant to section 2—619 of the Code admits all well-pleaded facts as well as any reasonable inferences which may be drawn from those facts. (*Benton v. Smith* (1987), 157 Ill. App. 3d 847, 852.) The defendant has the burden of proving the affirmative defense relied upon in a section 2—619 motion, and such a motion should only be granted if the record establishes that no genuine issue

of material fact exists. (*Bloomingdale State Bank v. Woodland Sales Co.* (1989), 186 Ill. App. 3d 227, 232.) The trial court may consider the pleadings, any affidavits submitted by the parties, and deposition evidence in ruling on a section 2—619 motion. *Bloomingdale State Bank*, 186 Ill. App. 3d at 232.

■■ ■ We shall first consider whether the circuit court was correct in ruling that Streams' complaint was barred under the doctrine of collateral estoppel. This doctrine applies if a party or its privy participates in two separate cases involving different causes of action and a controlling fact or issue material to the determination of both cases has been adjudicated against that party in the initial action by a court of competent jurisdiction. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252.) The judgment in the initial action will only estop relitigation of questions actually determined in that action, not matters which might have been litigated. (*YMCA*, 101 Ill. 2d at 252.) The party seeking to have the doctrine of collateral estoppel applied must meet the heavy burden of establishing with certainty that the identical and precise issue sought to be precluded in the later action was decided in the previous action. *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 853.

■■ The automatic stay provision of the Bankruptcy Code states that the filing of a bankruptcy operates as a stay of any act to obtain possession or control of property of the bankruptcy estate. (11 U.S.C. §362(a)(3) (Supp. V 1987).) This provision prevented Streams from filing a forcible entry and detainer complaint in State court while the property was part of the DTS-2 bankruptcy estate unless Streams sought and received relief from the stay pursuant to section 362(d) (11 U.S.C. §362(d) (Supp. V 1987)). Streams therefore filed its complaint for relief from the stay which led to the May 4, 1987, agreed order.

Bosgraf contends that the above order resolves the same issue present in the subsequent State court action, the amount of assessments, if any, owed to Streams for the condominium unit in question. We disagree. The May 4 order states that DTS-2 "shall provide adequate protection for the secured interest of Streams" in the condominium unit by paying its proportionate monthly share of the common expenses of the complex and paying $125 per month as against Streams' post-petition arrearage claim. This order does not adjudicate the total amount due Streams for past-due assessments which is what Streams sought in the present forcible entry and detainer action. Instead, it merely provides that DTS-2 will pay $125 per month to be set off against Streams' claim for post-petition assessments.

■ Adequate protection (see 11 U.S.C. §361 (Supp. V 1987)) is a device used to provide interim relief to protect secured creditors against losses resulting from the continuation of the automatic stay. (*In re Braniff Airways, Inc.* (5th Cir. 1986), 783 F.2d 1283, 1286-87.) It is not a method of conclusively resolving a secured creditor's claim against the debtor; thus, by its nature, it is not final unless the parties treat it as such. (*Braniff*, 783 F.2d at 1286; *In re Nordyke* (D. Ore. 1984), 43 Bankr. 856, 860.) Accordingly, we conclude that the May 4, 1987, adequate protection order did not resolve Streams' claim for past-due assessments. Therefore, the doctrine of collateral estoppel did not preclude Streams from asserting this claim in the present action, and the trial court erred by concluding to the contrary.

■ The trial judge also concluded that Streams' lawsuit was barred pursuant to the doctrine of election of remedies. Under this doctrine, the choice of one or more coexisting remedies will preclude a resort to the other remedies under circumstances in which the party should be estopped from filing further actions. (*Builders Plumbing Supply Co. v. Zambetta* (1986), 143 Ill. App. 3d 188, 190-91.) The doctrine is generally confined to situations in which (1) double compensation is threatened, (2) plaintiff's conduct has misled defendant causing defendant to change his or her position in reliance upon it, or (3) the doctrine of *res judicata* is applicable. *Zambetta*, 143 Ill. App. 3d at 191.

■ Additionally, our supreme court has held that the defense of election of remedies is not available unless the remedies sought by the plaintiff are inconsistent. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 365-66; *People ex rel. Ames v. Marx* (1938), 370 Ill. 264, 270.) Although this court stated to the contrary in *Zambetta* (143 Ill. App. 3d at 190-91), we are obliged to follow our supreme court with regard to this point. Our supreme court stated in *Marx* that if two people are independently liable on a debt suing one will not bar suit against the other under the election of remedies doctrine unless there is a satisfaction in the initial action. (370 Ill. at 270.) The court in *Marx* thus recognized that when two individuals have independent liability on the same demand, there is nothing inconsistent about suing both of them.

In the case at bar, Streams received an order from the bankruptcy court directing DTS-2 to pay the assessments as they came due and $125 per month on arrearages from past-due post-bankruptcy petition assessments. The parties agree that Streams did not receive satisfaction of the amount due; Bosgraf stated in her motion to dismiss that DTS-2 defaulted on the payments "almost immediately."

Since Streams alleges that Bosgraf has independent liability for the past-due assessments because of her status as the owner of the unit (see Ill. Rev. Stat. 1989, ch. 30, par. 309), its forcible entry and detainer action is not barred under the doctrine of election of remedies because of the bankruptcy court proceedings. The trial court erred by concluding to the contrary.

■■ In so holding, we note that Bosgraf's contention that Streams will gain a full satisfaction of the past-due assessments by filing an administrative claim in the DTS-2 bankruptcy is entirely speculative. The type of administrative claim which DTS-2 could maintain is one for "the actual, necessary costs and expenses of preserving the estate." (See 11 U.S.C. §503(b)(1)(A) (Supp. V 1987).) Such a claim is entitled to top priority in payment of claims against the estate. (See 11 U.S.C. §507(a)(1) (1982).) It is questionable, however, the extent to which the Streams' claim would be allowed as an administrative expense. In two cases, bankruptcy courts have denied administrative claim status to condominium association claims for monthly assessments fees. (*In re Butcher* (E.D. Tenn. 1989), 108 Bankr. 634; *In re Mishkin* (S.D.N.Y. 1988), 85 Bankr. 18.) The court stated in *Butcher* that the claimant was required to show the necessity of the claimed expenses for preservation of the estate and the actual value to the estate resulting therefrom before they would be given administrative claim status, and the creditor association failed to do so. (*Butcher*, 108 Bankr. at 638.) In *Mishkin*, the association's claim was denied because it failed to show that the funds were used to preserve the debtor's property rather than the condominium community as a whole. (*Mishkin*, 85 Bankr. at 21.) Therefore, the Streams' claim against DTS-2 may not be accorded administrative claim status and given top priority. This would diminish the possibility of double recovery emphasized by Bosgraf.

For the first time on appeal, Bosgraf contends that the instant lawsuit is barred under the doctrine of *laches*. She contends that this argument is not waived because an appellee may raise any ground warranted by the record to support the trial court's judgment even if the trial court did not rely upon that ground and it was not raised below. See *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502.

■■ Even if the *laches* argument is not waived, it is without merit. *Laches* is an equitable doctrine which bars an action if, because of an unreasonable delay in bringing suit, a party is misled or prejudiced or takes a course of action that he or she would not have otherwise taken. (*People ex rel. Nelson v. Village of Long Grove* (1988), 169

Ill. App. 3d 866, 874-75.) Here, as we have seen, the automatic stay in bankruptcy prevented a forcible entry and detainer action from being filed while the condominium unit was the property of the DTS-2 bankruptcy estate. Under these circumstances, the delay in bringing suit cannot be considered unreasonable.

For the above reasons, the order of the circuit court of Du Page County granting Bosgraf's motion to dismiss is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and INGLIS, JJ., concur.