**William LEVY and Harper Realty, Inc., Plaintiffs,**

v.

**VERSAR, INC., Defendant.**

No. 92 C 4836.

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1995.

Arthur M. Holtzman, Donald J. Moran,
and Emmanuel A. Sevastianos, Pedersen &

Houpt, P.C., Chicago, IL, for William Levy and Harper Realty, Inc.

David Alan Bonoma, Phelan, Pope, Cahill, Devine & Quinlan, Ltd., Chicago, IL, for Versar, Inc.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

The Plaintiffs in this case, Harper Realty, Inc. ("Harper") and its president, William Levy ("Levy"), seek to recover damages for negligent representation from Defendant Versar, Inc. ("Versar"), an environmental engineering and consulting company. Currently before the Court is Versar's motion for partial summary judgment on the issue of damages pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons stated below, Versar's motion for partial summary judgment is denied.

### FACTS

The facts which follow are both material and undisputed. The Court finds that these facts are without substantial controversy and will be deemed established at trial, pursuant to Fed.R.Civ.P. 56(d). Levy is a citizen of Illinois and is the sole shareholder, president and chief executive officer of Harper, an Illinois corporation. See Def.'s Rule 12(m) Statement at ¶¶ 1–2, 6. Versar is a Delaware corporation which provides environmental engineering and consulting services. See id. at ¶ 3.

The realty (the "property") which is at the center of this dispute is located at 2901 North Clybourn Avenue in Chicago, Illinois. See id. at ¶ 7. Levy owns the beneficial interest of LaSalle Bank Trust No. 114077, which holds legal title to the property. See id. at ¶¶ 6–7. On February 14, 1989, Levy purchased the property from Jerry and Martin Schaffner (the "Schaffners") who owned the property individually and as the sole beneficiaries of Boulevard Bank Trust No. 6899. See id. at ¶¶ 8–9. After the purchase, the property was found to be contaminated.

See id. at ¶ 10. Subsequently, Levy filed an action in the United States District Court for the Northern District of Illinois, LaSalle Nat'l Trust, etc. v. Jerry Schaffner et al., No. 91 C 8247, 1993 WL 499742, against the Schaffners, alleging that the Schaffners were liable for the cost of remediating the property. See id. at ¶ 11. On November 23, 1993, Judge Hart ruled, pursuant to 42 U.S.C. § 9613(g), that the Schaffners and other defendants (collectively known as the "Chicagoland defendants[1]") were "liable for necessary future response costs consistent with the 1990 [National Contingency Plan]" at the property under 42 U.S.C. § 9607(a). LaSalle Nat'l Trust, Etc. v. Jerry Schaffner et al., No. 91 C 8247, Mem. Op. and Order at 17, 1993 WL 499742 (N.D.Ill. Nov. 23, 1993).

On June 21, 1994, Plaintiffs Levy and Harper, Defendant Versar, and the previously dismissed third party defendants stipulated to the facts which follow. The damages alleged in Case No. 91 C 8247 are identical to the alleged damages in the present case against Versar. See Stipulation for Voluntary Dismissal of Versar's Amended Third Party Compl. for Contribution (hereinafter "Stipulation") at ¶ 5. The plaintiffs in the present case[2] and the Chicagoland defendants executed a settlement agreement which fully resolved all issues between those parties relating to the property. See id. at ¶¶ 6, 7(b) and 7(f). The Chicagoland defendants were discharged from tort liability for their actions in connection with the property by the settlement agreement. See id. at ¶ 7(g). "Versar's potential tort liability in the instant case arises out of the same alleged injury and damages for which" the Chicagoland defendants were released. See id. at ¶ 7(h).

### DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is only proper when the record shows that there is no genuine issue as to any material fact and that the

---

1. The "Chicagoland defendants" consist of Chicagoland Laundry and Cleaners, Inc. and Jerry and Martin Schaffner, the owner/operators of Chicagoland. See LaSalle Nat'l Trust at 2.

2. The parties have stipulated that "[t]he plaintiffs in the instant case are legally, practically, and for all intents and purposes, the same plaintiffs as in case no. 91 C 8247." See Stipulation at ¶ 7(b).

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making its determination "[t]he court must view all evidence in the light most favorable to the party opposing the motion for summary judgment," *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990), and draw all reasonable inferences in the nonmovant's favor. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.) *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). However, "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–27, 106 S.Ct. at 2553–55. Thus, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a proper motion for summary judgment. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *see also Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.") Additionally, disputed facts become material only when they have the ability to affect the outcome of the suit. *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). And all affidavits and depositions presented must be based upon personal knowledge of the affiant or deponent and must set forth facts in a manner which would be admissible in evidence. *See Davis v. City of Chicago*, 841 F.2d 186,

188 (7th Cir.1988); Fed.R.Civ.P. 56(e). The sole function of the court's deliberations is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### B. *Collateral Estoppel*

"Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). The scope of collateral estoppel has been broadened in recent years by abolishing the requirement of mutuality of parties and by allowing the doctrine to be used "offensively" as well as defensively by a nonparty to the prior lawsuit. *Mendoza*, 464 U.S. at 158–59, 104 S.Ct. at 571–72 (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

■ Versar seeks to use offensive nonmutual collateral estoppel to preclude Plaintiffs from seeking damages for which the Chicagoland defendants have been found liable in prior litigation. The Seventh Circuit has articulated a four part test for collateral estoppel:

> For collateral estoppel to apply, four elements must be met: 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*La Preferida, Inc. v. Cerveceria Modelo, S.A.*, 914 F.2d 900, 905–06 (7th Cir.1990). Because collateral estoppel is an affirmative defense, Versar has the burden of demonstrating its existence.[3] *See id.* at 906.

■ Versar has failed to demonstrate that the issue sought to be precluded in this action is the same as the issue involved in Case No. 91 C 8247. Versar claims that, "the issue of plaintiffs' liability for future response costs associated with the remediation of contamination at the property was actually litigated and decided on the merits in [Case No. 91 C 8247]." *See* Def.'s Mem. of L. in Supp. of Its Mot. for Partial Summ.J. on the Issue of Damages at 6. However, it was the Chicagoland defendants' liability for response costs which was decided in the prior litigation, not Versar's liability. Therefore, the issue sought to be precluded is not the same as in the prior litigation and collateral estoppel is not applicable.

## C. *CERCLA*

■ Versar also claims that 42 U.S.C. § 9613(g)(2) codifies the collateral estoppel doctrine for CERCLA actions. *See id.* at 6. This CERCLA provision states:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action to recover further response costs or damages.

42 U.S.C. § 9613(g)(2). Under this provision, the ruling in Case No. 91 C 8247 that the Chicagoland defendants are liable under CERCLA for future response costs at the property is binding upon this Court. But the

prior litigation did not determine Versar's liability *vel non* for future response costs; it established the Chicagoland defendants' liability. Therefore, this provision does not prevent Plaintiffs from attempting to establish that Versar is also liable for the same response costs under a common law cause of action.

CERCLA contains a "savings provision" for common law causes of action at 42 U.S.C. § 9652(d). This savings provision states that, "[n]othing in this chapter shall effect or modify, in any way, the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." "Versar concedes that Plaintiffs' state law remedy survives[,]" but claims that Plaintiffs may not seek recovery for damages for which the Chicagoland defendants have been found liable. *See* Def.'s Reply in Supp. of Its Mot. for Partial Summ.J. at 11.

■ Although Plaintiffs may maintain their state law claims against Versar, CERCLA explicitly forbids double recoveries at 42 U.S.C. § 9614(b), which states that:

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

---

3. Versar undermines its ability to carry this burden by stating that "plaintiffs [have] stipulated that none of the consideration paid as a part of that settlement was 'allocated between or among the theories, counts or claims propounded by the plaintiffs in [that] case.' Consequently, ... plaintiffs cannot now argue that that (sic) set-off relates to future clean-up costs as opposed to plaintiffs' other alleged damages that will survive this motion." *See* Def.'s Reply in Supp. of Its Mot. for Partial Summ.J. at 8. In *Bollinger v. Rheem Mfg. Co.*, 381 F.2d 182 (10th Cir.1967), a similar inability to allocate settlement proceeds among injuries prevented a defendant from meeting this burden:

> We do not dispute the rule that a plaintiff cannot twice recover for the same damages, but we think that an allegation of double recovery presents a question of proof. We conclude that appellant, who asserted the double recovery, had the burden to show that the settlement and satisfaction of the judgment entered against him would together constitute a double recovery by Rheem for the same losses. Appellant has not carried this burden as there is no evidence in the record indicating the alleged losses to which the settlement applied.
> *Id.* at 185.

Thus, if Plaintiffs have received compensation for future response costs from the Chicagoland defendants, Versar is not subject to liability for those compensated damages. Contrary to Versar's contentions, the June 21st stipulation does not demonstrate that the Plaintiffs will receive a double recovery if they are permitted to seek damages in this action for future response costs. The stipulation does not state that the Chicagoland defendants have satisfied the prior judgment. The stipulation merely states that the Plaintiffs and the Chicagoland defendants entered into a settlement agreement which discharged the Chicagoland defendants from liability for the prior judgment. *See* Stipulation at ¶ 7(g). The stipulation speaks of "consideration paid, or to be paid"; it does not state that the Chicagoland defendants have fulfilled their obligations under the settlement agreement. *See* Stipulation at ¶¶ 7(c) and 7(d).

■ Without demonstrating that the Chicagoland defendants have compensated the Plaintiffs for future response costs, Versar cannot rely upon 42 U.S.C. § 9614(b) to support their motion for summary judgment. Even if Versar had shown that the Chicagoland defendants fulfilled their obligations under the settlement, that would not necessarily bar the Plaintiffs from seeking future response damages from Versar. *See Welsh v. Gerber Products, Inc.*, 839 F.2d 1035 (4th Cir.1988). In *Welsh*, the Court certified a similar question, answered by 315 Md. 510, 555 A.2d 486 (1989), which states:

> In simplest terms, a satisfaction is an acceptance of full compensation for an injury while a release is a partial abandonment of a cause of action. Although the public policy against double recoveries continues to limit a plaintiff to one satisfaction regardless of which tortfeasor provides it, modern law now generally recognizes that

a bargained release of one tortfeasor does not always amount to a full satisfaction. In such cases, the plaintiff remains free to pursue additional compensation from the non-released parties subject to a proportional reduction in the ultimate recovery which would reflect the payments achieved from the released tortfeasor.

*Welsh*, 839 F.2d at 1037. Moreover, under the Second Restatement of Torts, the Chicagoland defendants' settlement agreement would not discharge Versar, unless the agreement provided for such a discharge. *See* Restatement, Second, Torts § 886 ("The discharge of a judgment against one of several tortfeasors each of whom is liable for a single harm is treated like a release or covenant not to sue given to one of several tortfeasors for a claim not reduced to judgment."); *id.* at § 885(1) ("A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them."). There is no evidence that the settlement agreement provides for a discharge of Versar. The Restatement also states the general rule [4] that, "[a]lthough a judgment may terminate a cause of action against the party sued, ... the same result is not reached regarding the effect of the judgment upon the liability of another tortfeasor responsible for the same harm." Restatement, Second, Torts § 884, comment a. Thus, no threat of double compensation has been demonstrated and 42 U.S.C. § 9614(b) does not prevent Plaintiffs from seeking damages for future response costs. *See Price v. United States Navy*, 818 F.Supp. 1326, 1332–33 (S.D.Cal.1992) (finding that 42 U.S.C. § 9614(b) provides a right to set-offs), *affd*, 39 F.3d 1011 (9th Cir.1994). Plaintiffs also do not contest that, if Versar is found liable, CERCLA's prohibition on double recovery requires that the amount of this

---

4. See Restatement, Second, Judgments § 49 which states that: "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefore." See also, the comment to this section which states that:

the claim against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.... When the claimant thus brings consecutive actions against different persons liable for the same harm, the rendition of the judgment in the first action does not terminate the claims against other persons who may be liable for the loss in question.... Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments.

*Id.* § 49, comment a.

liability will be set off by the amount that Plaintiffs have received under the settlement agreement between Plaintiffs and the Chicagoland defendants. *See* Pl.s' Mem. in Opp'n to Def.'s Mot. for Partial Summ.J. on the Issue of Damages at 11.

### D. *Election of Remedies*

Illinois law limits the doctrine of election of remedies to "its true remedial purpose as a doctrine of substance; and ... should be confined to cases where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res judicata can be applied." *Faber, Coe & Gregg, Inc. v. First Nat'l Bank of Chicago*, 107 Ill.App.2d 204, 246 N.E.2d 96, 100 (1969) (citations omitted). Thus, seeking damages for future response costs under Illinois law for negligent representation will be barred if it threatens double compensation.

The result in this case under Illinois' election of remedies doctrine is similar to that under 42 U.S.C. § 9614(b). Under Illinois law, "if two people are independently liable ... suing one will not bar suit against the other under the election of remedies doctrine unless there is a satisfaction in the initial action.... [T]hus when two individuals have independent liability on the same [damages], there is nothing inconsistent about suing both of them." *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill.App.3d 1010, 162 Ill.Dec. 607, 611, 580 N.E.2d 570, 574 (1991) (citations omitted). Thus, because Versar has not demonstrated that the prior judgment against the Chicagoland defendants has been satisfied,[5] Illinois' election of remedies doctrine does not preclude Plaintiffs from seeking future response costs from Versar.

### CONCLUSION

Plaintiffs have obtained a previous judgment against the Chicagoland defendants for the same damages it seeks in this case. Therefore, if Versar is found liable, it shall be entitled to an appropriate set off for any proceeds Plaintiffs have received from the Chicagoland defendants for future response costs at the property. However, there has not been a satisfaction of the judgment against the Chicagoland defendants. Therefore, Versar's motion for partial judgment is denied.

---

**5.** "Satisfaction" is not accomplished by the execution of a settlement agreement, but by the performance of the settlement agreement. *See,* *e.g., Jones v. Whiteley*, 112 Idaho 886, 736 P.2d 1340, 1344 (App.1987).