**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200462-U

Order filed November 15, 2021

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | |
|---|---|
| CAMP STREET CROSSING, LLC, an Illinois limited liability company, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit Tazewell County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-20-0462 |
| AD IN, INC., an Illinois corporation d/b/a Edible Arrangements; JANE A. CLUVER; JACOB CLUVER, | ) ) ) ) | Circuit No. 19-L-81 |
| Defendants | ) ) | |
| (Jacob Cluver, Defendant-Appellant). | ) ) ) | Honorable Stephen A. Kouri, Judge, Presiding. |

---

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.
Justice Holdridge also specially concurs.

---

**ORDER**

¶ 1     *Held*:  (1) Trial court's award of summary judgment to lessor of commercial property against guarantor was proper where (a) lessor also sought damages for breach of lease from co-guarantor in bankruptcy court, and (b) lessor listed property for rent within a few months of lessee abandoning it and one month after lessor finished improvements; (2) provision in lease requiring lessee to pay one-and-one-quarter times rent set forth in lease as "liquidated damages" was unenforceable penalty.

¶ 2        In 2013, lessor-plaintiff Camp Street Crossing, LLC entered into a 10-year commercial lease with lessee-defendant Ad In, Inc., d/b/a/ Edible Arrangements. Defendants Jane A. Cluver and her son Jacob Cluver personally guaranteed Ad In, Inc.'s payments under the lease. In October 2019, plaintiff filed a complaint against defendants for breach of lease. Defendants answered the complaint and raised the affirmative defense of failure to mitigate. Plaintiff filed a motion for summary judgment. Thereafter, Jane Cluver and Ad In, Inc. declared bankruptcy. Plaintiff filed a claim in Jane Cluver's bankruptcy case, which the bankruptcy court reduced. The trial court granted plaintiff's motion for summary judgment and entered judgment against Jacob Cluver for amounts due under the lease, including an amount to be held in trust for plaintiff. Jacob filed a motion to vacate the trial court's orders, which the court denied. Jacob appeals, arguing that the trial court erred in granting summary judgment because (1) the doctrine of election of remedies precludes judgment against him, (2) plaintiff did not prove it mitigated its damages, and (3) plaintiff was not entitled to all the damages the trial court awarded after January 2020. We affirm the trial court's award of summary judgment against Jacob Cluver and its order for amounts due under the lease up to January 2020, but reverse the trial court's order with respect to the amounts due from February 1, 2020, to April 30, 2023, and remand with instructions.

¶ 3                                      BACKGROUND

¶ 4        In 2013, plaintiff and defendant Ad In, Inc. entered into a 10-year commercial lease for property located at 807 West Camp Street in East Peoria. Plaintiff was the owner of the property, and defendant Ad In, Inc. was the tenant. The lease was for a store consisting of approximately 1,490 square feet inside a 28,000-square-foot shopping center owned by plaintiff.

¶ 5        The term of the lease was May 1, 2013, to May 1, 2023. The lease agreement set forth the fixed minimum rent for the lease term, which increased every year, with monthly rent of $3,160.20

from May 1, 2019 to April 30, 2020; $3,223.40 from May 1, 2020 to April 30, 2021; $3,287.87 from May 1, 2021 to April 30, 2022; and $3,353.63 from May 1, 2022 to April 30, 2023. The lease agreement required defendant to pay rent on the first of each month. Paragraph 6 of the lease required defendant to also pay plaintiff "upon demand, in addition to the Rent a proportionate share of costs of operating and maintaining common areas and common facilities," known as CAM charges. In addition, paragraph 23 required Ad In, Inc. to contract for and pay "all charges for connection or use of water, gas, electricity, cable TV, telephone, garbage collection, sewer use and other utility services supplied to the Premises during the term of this Lease." Jacob and Jane Cluver individually guaranteed the rent and other payments under the lease for Ad In, Inc.

¶ 6        Pursuant to the lease, defendant was to operate as Edible Arrangements and agreed to keep its business open and operating no less than nine hours per day Monday through Friday and six hours on Saturdays. Paragraph 12 of the lease agreement, entitled "CONTINUOUS OPERATION," provided in pertinent part:

> "In the event Tenant vacates, abandons, deserts, ceases its operation in the Premises or otherwise violates this agreement to effectively operate, then without the Owner waiving any rights contained in the Lease, Tenant agrees that during the period of such violation, in addition to paying all other charges due under this Lease, it shall pay Rent to the Owner at a prorated daily rate of one and one quarter times the last periodic rental rate specified in this Lease, such amount to be construed as liquidated damages to Owner caused by Tenant's failure to operate in strict accordance herewith. Further, Tenant's failure to comply with the continuous operation of Tenant's business during its normal business hours, which shall include Monday through Saturday, except when the Premises are untenantable by

3

reason of the occurrence of any damage thereto or the destruction thereof, shall constitute a default under this Lease and shall give Owner all of the rights and remedies set forth in in this Lease."

¶ 7    Paragraph 37 of the lease agreement addressed "TENANT'S DEFAULT IN PAYMENTS" and provided in pertinent part as follows:

"If any Rent, or other sums due and payable under this Lease are not paid by the Tenant within three (3) days after same are due and payable, Tenant agrees to pay Owner a late charge equal to 10% of Rent, and other sums due and payable. ***

If any rent or any other sums payable by Tenant hereunder shall remain unpaid seven (7) days after the date the Rent or any other sums are due and payable, then, upon seven (7) days written notice to cure from Owner, it shall be optional for the Owner to re-enter the Premises, with or without process of law, declare this Lease Forfeited and said Lease Term Ended. ***

In the event that Owner declares the Lease forfeited as provided for in this paragraph, then an amount equal to the total remaining Rent for the balance of the Lease Term hereof shall be immediately due and payable in trust either to investors who hold a real estate mortgage on the Owner's property or to the Owner. Such funds so held shall be used by the Owner first to pay all reasonable expenses, including any brokerage fees and the cost of releasing and/or reconstruction, connected with obtaining and securing a new tenant for the Premises upon such terms and conditions as the Owner shall deem reasonable and proper and then to apply any part of the balance against the Rent each month until the Owner has

4

successfully obtained a new tenant and then to apply any part of the balance to the difference, if any, in Rent for the remaining Lease Term and such new lease and then to distribute the remaining balance, if any, to the Tenant. The owner shall have the full and uncontested right to take possession of the Premises. But notwithstanding such re-entry by the Owner and the holding of said funds, the liability of the Tenant for the Rent and other covenants for the balance of the Lease Term provided for herein shall not be relinquished or extinguished. It is further agreed that the Tenant will pay, in addition to the Rent and other sums agreed to be paid hereunder, all costs and expenses incurred by the Owner as well as such sums as the court may adjudge reasonable as attorneys' fees in any suit or action instituted by the Owner to enforce the provisions of this Lease or the collection of the Rent or other payments due hereunder."

¶ 8    In December 2018 and January 2019, defendants paid their rent late and incurred late charges of $418.18 in December 2018, and $460.99 in January 2019. In August 2019, defendants did not pay rent, CAM charges or utilities for the property. Defendants vacated the property without notice to plaintiff on August 10, 2019.

¶ 9    On September 5, 2019, plaintiff re-entered the property, and on September 6, 2019, plaintiff demanded payment from defendants. Thereafter, plaintiff's maintenance team spent several days cleaning the property. After inspecting the property, plaintiff discovered the HVAC system was not working properly. On October 24, 2019, plaintiff obtained a bid to replace the HVAC system. The HVAC system was replaced in late October or early November 2019.

¶ 10    In October 2019, plaintiff filed a complaint against defendants alleging that they paid their rent late in December 2018 and January 2019, incurring late charges, which they failed to pay.

5

Plaintiff also alleged defendants failed to pay rent and other charges, including late charges, in August 2019, and that on or before September 4, 2019, defendants vacated the premises. In its complaint, plaintiff sought rent of "one and one quarter times" the rent listed in the lease from September 1, 2019, to May 1, 2023, plus all CAM charges for that period, the December 2018 and January 2019 late charges, all amounts owed for August 2019, and "reasonable attorneys' fees and costs, pursuant to the Lease."

¶ 11        Defendants filed an answer and affirmative defense. In their affirmative defense, defendants alleged that plaintiff had a statutory duty to mitigate its damages by taking all reasonable steps necessary to re-rent the premises as quickly as possible and that plaintiff failed to fulfill its duty to mitigate its damages.

¶ 12        On January 6, 2020, plaintiff filed a motion for summary judgment. Plaintiff alleged that it was due $14,043.17 for the following: the December 2018 late charge, the January 2019 late charge, the August 2019 late charge, the August 2019 rent, the August 2019 utilities, the cost of replacing the HVAC system, and attorney fees and costs. Plaintiff further asserted that it was due to hold in trust, pursuant to the lease, a total of $236,490, made up of monthly charges of $5,243.76 from September 2019 to April 2020, $5,322.76 from May 2020 to April 2021, $5,403,35 from May 2021 to April 2022, and $5,485.55 from May 2022 to April 2023. The monthly charges consisted of rent for each month, plus "a liquidated damages charge, pursuant to the Lease, equal to 25% of the rent for that month," utility charges of $200 per month, and CAM charges of $1,093.51 per month.

¶ 13        Attached to plaintiff's motion was an affidavit from Paul J. LaFave, a member/manager of plaintiff, dated December 23, 2019. LaFave asserted that Ad In, Inc. had not paid the December 2018 late charge, the January 2019 late charge, or any amounts owed for rent, CAM charges or

late charges for August 2019. LaFave stated that after defendants vacated the property, the property had to be cleaned by plaintiff's maintenance crew, and the HVAC system had to be replaced at a cost of $8,197. Thereafter, the property was listed for lease with Maloof Commercial Real Estate, pursuant to an existing contract between plaintiff and Maloof to list plaintiff's vacant units. According to LaFave, "As of the date of this affidavit, the Premises have been listed on Maloof's website for several weeks and Maloof has reported to Plaintiff it has shown the Premises to multiple interested parties." However, according to LaFave, "Plaintiff has been unable to secure another tenant for the premises."

¶ 14     Defendants did not respond to plaintiff's motion for summary judgment. On January 21, 2020, Ad In, Inc. filed a Chapter 7 voluntary petition in Bankruptcy Court. On January 27, 2020, Jane Cluver filed for Chapter 13 bankruptcy.

¶ 15     On January 27, 2020, the trial court entered an order granting judgment in favor of plaintiff and against Jacob Cluver, "for all amounts due pursuant to the Lease through January 31, 2020, in an amount to be determined at a subsequent hearing." On February 20, 2020, the trial court entered an order of summary judgment, requiring Jacob to pay a total of $47,851.02, consisting of the following: December 2018 late charges of $418.18, January 2019 late charges of $460.99, August 2019 rent and late charges of $4,967, monthly charges of $5,243.76 for September 2019 through January 2020, HVAC replacement at $8,197, and attorney fees and costs of $7,589.05.

¶ 16     The court took under advisement any judgment "for the amounts due pursuant to the Lease from February 1, 2020, to April 30, 2023." The court reserved judgment against Ad In, Inc. and Jane Cluver pending the outcomes of their bankruptcy cases. On March 3, 2020, Jacob Cluver filed a motion to reconsider and vacate the court's January 27, 2020 order, arguing that plaintiff failed to "offer sufficient evidence of its mitigation efforts."

¶ 17        On March 20, 2020, plaintiff filed a Proof of Claim in Jane Cluver's bankruptcy case for breach of lease in the amount of $258,122.22. The Bankruptcy Trustee objected to the amount of the claim, asking it to be reduced to $89,811.75. On May 27, 2020, the Bankruptcy Court entered an order allowing the Trustee's objection.

¶ 18        On June 11, 2020, the trial court denied Jacob's motion to reconsider and vacate the January 27, 2020 order. On July 14, 2020, the court entered an order of summary judgment as to amounts due from February 1, 2020, to April 30, 2023. The order required Jacob Cluver to pay a total of $39,546.86 for charges from February 2020 to July 2020, representing monthly charges of $5,243.76 from February to April 2020, monthly charges of $5,322.76 from May to July 2020, and attorney fees and costs of $7,847.30. The court further ordered that $178,571.64 be held in trust. The trust amount consisted of monthly charges of $5,322.76 from August 2020 to April 2021, $5,403.35 from May 2021 to April 2022, and $5,485.55 for May 2022 to April 2023. The monthly charges included rent of one-and-one-quarter times the rental amounts set forth in the lease, CAM charges and utility charges.

¶ 19        On August 13, 2020, Jacob Cluver filed a motion to vacate the trial court's summary judgment orders, asserting that plaintiff's claim against him was barred by the doctrine of election of remedies. The trial court denied the motion.

¶ 20                                  ANALYSIS

¶ 21        Resolving a case by summary judgment is considered a drastic measure. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Therefore, summary judgment should be granted only when the moving party's right to judgment is clear and free from doubt. *Id.* Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* When a reasonable person could draw divergent inferences from undisputed

facts, summary judgment should be denied. *Id.* On a motion for summary judgment, the trial judge must construe the record strictly against the movant and liberally in favor of the nonmovant. *Id.* An appellate court reviews the entry of summary judgment *de novo. Id.*

¶ 22                                             I.

¶ 23        Jacob first argues that the doctrine of election of remedies precluded the court from entering summary judgment against him because plaintiff sought recovery from Jane Cluver in her bankruptcy case.

¶ 24        "The doctrine of election of remedies is applicable only where one party has elected inconsistent remedies for the same injury or cause of action." *Lempa v. Finkel*, 278 Ill. App. 3d 417, 423 (1996). "The prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights." *Id*. at 424. "For one proceeding to be a bar to another, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other." *Fleming v. Dillon*, 370 Ill. 325, 332 (1938).

¶ 25        Under Illinois law, "all joint contractual obligations are also joint and several obligations." *Homstrom v. Kunis*, 221 Ill. App. 3d 317, 324 (1991); see *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 608 (1980). "All parties to a joint obligation *** may be sued jointly, or separate actions may be brought against one or more of them." 735 ILCS 5/2-410 (West 2020). "A judgment against fewer than all the parties to a joint *** obligation does not bar an action against those not included in the judgment or not sued." *Id*. Each of the obligors may be held liable for the full amount of damages. *Private Bank & Trust Co. v. EMS Investors, LLC*, 2015 IL App (1st) 141689, ¶ 18.

¶ 26    "As a general rule, obtaining judgment against one person liable for a loss does not bar the plaintiff from prosecuting claims against any other person who may also be liable for that loss." *Saichek v. Lupa*, 204 Ill. 2d 127, 137 (2003). This rule applies in breach of contract actions. See Restatement (First) of Judgments, § 94 (1942) ("[T]he rendition of a judgment in an action against one of two or more persons liable for a *** breach of contract *** does not affect the claim against the other."). "[I]f two people are independently liable on a debt suing one will not bar suit against the other under the election of remedies doctrine unless there is a satisfaction in the initial action." *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010, 1015 (1991). "[W]hen two individuals have independent liability on the same demand, there is nothing inconsistent about suing both of them." *Id.*

¶ 27    The doctrine of election of remedies does not bar recovery when a plaintiff files a claim against a corporate defendant in bankruptcy court and also files a civil action against individual defendants seeking the same relief because "the remedies are consistent and complimentary." *Kalabogias v. Georgou*, 254 Ill. App. 3d 740, 750 (1993); see also *Poswick v. Cutten*, 258 A.D. 218, 220 (N.Y. App. Div. 1939) ("there is no inconsistency in the claims" when a plaintiff files a claim in bankruptcy court against one defendant and a civil action against another jointly and severally liable defendant); *In re Rosales*, 621 B.R. 903, 932 (D. Kan. 2020) (election of remedies doctrine inapplicable where the plaintiff sought recovery from debtors in bankruptcy case and later filed civil action against defendants who were jointly and severally liable).

¶ 28    Here, the doctrine of remedies does not preclude plaintiff from seeking recovery from both Jane's bankruptcy estate and Jacob simultaneously because the remedies are not inconsistent. See *Kalabogias*, 254 Ill. App. 3d at 750; *Bosgraf*, 219 Ill. App. 3d at 1015. While plaintiff may not satisfy more than one judgment, plaintiff is not precluded from obtaining more than one judgment

10

from more than one joint wrongdoer. See 735 ILCS 5/2-410 (West 2020). The doctrine of election of remedies did not preclude the trial court from granting summary judgment to plaintiff.

¶ 29                                                    II.

¶ 30        Next, Jacob argues that the trial court erred in entering summary judgment against him because plaintiff failed to establish that it mitigated its damages.

¶ 31        "[A] landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee." 735 ILCS 5/9-213.1 (West 2020). The purpose of this provision "is to require landlords to make reasonable efforts to relet the premises following a tenant's departure, rather than allowing the premises to stand vacant and the landlord to collect rent in the form of damages." *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 290-91 (1998).

¶ 32        The mitigation of damages doctrine "long constituted an affirmative defense to be pleaded and proved by the defendant." *Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶ 15. However, courts now generally require that the landlord bear the burden of proving mitigation. See *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608 (2009); *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293; *Snyder v. Ambrose*, 266 Ill. App. 3d 163, 166 (1994). The rationale for shifting the burden of proof to the landlord is that "it is in the best position to come forward with evidence of its reasonable efforts in mitigation." *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293.

¶ 33        There are no definite rules as to what constitutes 'reasonable measures' to mitigate following a tenant's abandonment of property covered by a long-term commercial lease. See *St. George Chicago, Inc.,* 296 Ill. App. 3d at 292. "That determination is best made by the trier of fact." *Id*. It is not the duty of a reviewing court to "perform the trier's function and redetermine the

11

reasonableness of [the landlord's] efforts." *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 31 (1993). A trial court's determination that a plaintiff made reasonable efforts to mitigate its damages will not be reversed unless it is against the manifest weight of the damages. See *id*.

¶ 34    A delay of two to three months between a tenant's vacatur of property and the landlord's listing of the property for rent has been found to constitute reasonable mitigation. See *Properties Investment Group of Mid-America v. JBA, Inc.*, 495 N.W.2d 624, 628-29 (Neb. 1993) (landlord's failure to list property with real estate agent or broker for three months was not unreasonable); *MRI Northwest Rentals Investments I, Inc., v. Schnucks-Twenty-Five, Inc.*, 807 S.W.2d 531, 537 (Mo. Ct. App. 1991) (trial court did not err in finding landlord's "two to three month delay" in searching for a tenant to be reasonable).

¶ 35    A landlord's failure to mitigate damages reduces the damages recoverable. *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293-94. "[I]t is generally settled that where a landlord cannot demonstrate that it took reasonable steps to mitigate damages, the award of damages will be reduced by those losses the landlord could reasonably have avoided." *Takiff Properties*, 2018 IL App (1st) 171477, ¶ 22 (citing *Danada Square, LLC*, 392 Ill. App. 3d 598 at 610).

¶ 36    Here, the trial court's finding that plaintiff took reasonable measures to mitigate its damage was not against the manifest weight of the evidence. The undisputed facts establish that Ad In, Inc. vacated the property in August 2019, and plaintiff re-entered the property in early September 2019. Thereafter, several days were spent cleaning the property, and the HVAC system was replaced in late October or early November. While plaintiff failed to present evidence as to the exact date the property was listed for rent, based on LaFave's affidavit, the property had been listed with Maloof for "several weeks" as of December 27, 2019. Thus, at the most, three months elapsed from the time plaintiff re-entered the property until the time it instructed Maloof to list it for rent. For

12

approximately two months of that three-month period, plaintiff was making improvements to the property to make it attractive to potential lessees. Once the improvements were complete in late October or early November, approximately one month passed before plaintiff contracted with Maloof to list the property for rent. Allowing one to three months to pass before listing a property for rent does not establish a failure to take reasonable measures to mitigate damages. See *JBA, Inc.*, 495 N.W.2d at 628-29; *Schnucks-Twenty-Five, Inc.*, 807 S.W.2d 531 at 537. The evidence supports the trial court's finding that plaintiff adequately mitigated its damages.

¶ 37 Moreover, even if the evidence failed to show that plaintiff took reasonable measures to mitigate its damages for a few months, plaintiff would not be precluded from recovering damages. See *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293-94. Rather, plaintiff's damages would merely be reduced for those months that it failed to act reasonably to mitigate. See *St. George Chicago, Inc.*, 296 Ill. App. 3d at 293; *Danada Square, LLC*, 392 Ill. App. 3d at 610. The trial court's finding that plaintiff acted reasonably in attempting to mitigate its damages is not against the manifest weight of the evidence. Therefore, we will not reduce plaintiff's damage award on that basis.

¶ 38 III

¶ 39 Finally, Jacob asserts that the trial court's award of damages after January 2020 was improper because, pursuant to paragraph 12 of the lease, the court included rent "at a prorated daily rate of one and one quarter times the last periodic rental rate" set forth in the lease. According to Jacob, the lease provision allowing plaintiff to recover more than the rental rate provided in the lease, in addition to all other charges due under the lease, is an unenforceable penalty.

¶ 40 A lease is a contract and is governed by the rules that govern contracts generally. *Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 363 Ill. App. 3d 558, 564 (2006). Competent parties to a contract may agree to any terms they choose unless their agreement is prohibited by law or

13

contrary to public policy. *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 284 (2001).

¶ 41    When interpreting contract provisions that specify damages, courts draw a distinction between liquidated damages, which are enforceable, and penalties, which are not. *GK Development, Inc. v. Iowa Malls Financing Corp.*, 2013 IL App (1st) 112802, ¶ 47. Courts will invalidate liquidated damages clauses that amount to a windfall for one party. *Id*. ¶ 57. Courts will also invalidate a liquidated damages clause based on public policy where its purpose is not to estimate damages but to punish nonperformance or secure performance. *Id.* ¶¶ 47, 57. In doubtful cases, courts will construe a stipulated sum as a penalty. *Id.* ¶ 47. Whether a contractual provision is a valid liquidated damages clause or a penalty clause is a question of law that we review *de novo*. *Med+Plus Neck and Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 860 (2000).

¶ 42    In Illinois, courts will generally find a liquidated damages provision valid and enforceable in a lease agreement when (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which may be sustained; and (3) actual damages would be uncertain in amount and difficult to prove. *Grossinger Motorcorp, Inc. v. American National Bank and Trust Co.*, 240 Ill. App. 3d 737, 749 (1992). A valid liquidated damages clause will not allow the nonbreaching party to recover a sum in addition to actual damages sustained as a result of the breach. See *H & M Driver Leasing Services, Unlimited, Inc. v. Champion International Corp.*, 181 Ill. App. 3d 28, 31 (1989).

¶ 43    "Damages for breach of contract are intended to place the nonbreaching party in the same position as if the contract had been performed." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶ 44. It is a general rule of contracts that when a

14

defendant breaches a contract, the plaintiff is entitled to recover damages only to the extent of his injury. *Stride v. 120 West Madison Building Corp.*, 132 Ill. App. 3d 601, 605 (1985). Damages for breach of contract should only make the injured party whole again; they should not put the plaintiff in a better position than if there had been performance. *Wanderer v. Plainfield Carton Corp.*, 40 Ill. App. 3d 552, 556 (1976). This rule controls the measure of damages in cases involving the breach of a lease agreement. *Id.* "In interpreting provisions that affix the amount of damages in the event of a breach, courts 'lean toward a construction which excludes the idea of liquidated damages and permits the parties to recover only damages actually sustained.' " *Penske Truck Leasing Co., L.P. v. Chemetco, Inc.*, 311 Ill. App. 3d 447, 457 (2000) (quoting *Arco Bag Co. v. Facings, Inc.*, 18 Ill. App. 2d 110, 116 (1958)).

¶ 44    It is not against public policy to enforce a lease agreement obligating a tenant to continue paying rent after vacating the leased premises. *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 417 (2003) (citing *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724 (1992)). However, where a lease authorizes the lessor to recover all damages it sustained by reason of a lessee's breach, a provision requiring the lessee to pay a fixed sum as "liquidated damages" is not an enforceable liquidated damage clause but a penalty to assure performance. See *Stride*, 132 Ill. App. 3d at 605-06 (lease provision requiring lessee to pay double rent was unenforceable penalty). When a lessee breaches a lease, "[t]he lessor is entitled to such sum as shall be equal to rents required by the terms of the lease to be paid during the full term, and not to any greater sum." *Grommes v. St. Paul Trust Co.*, 147 Ill. 634, 645 (1893).

¶ 45    Here, paragraph 12 of the lease states that if defendant fails to continuously operate its business during specified hours, defendant agrees to pay, in addition to all other charges due under the lease, "Rent to the Owner at a prorated daily rate of one and one quarter times the last periodic

15

rental rate specified in this Lease, such amount to be construed as liquidated damages to Owner caused by Tenant's failure to operate in strict accordance herewith." Paragraph 37 of the lease states that if defendant fails to pay rent, plaintiff can re-enter the property, declare the lease forfeited and "an amount equal to the total remaining Rent for the balance of the Lease Term hereof shall be immediately due and payable in trust *** to the Owner." Paragraph 37 further provides: "[I]n addition to the Rent and other sums agreed to be paid hereunder," the Owner can recover "all "costs and expenses incurred *** as well as such sums as the court may adjudge reasonable as attorneys' fees in any suit or action instituted by the Owner to enforce the provisions of this Lease or the collection of the Rent or other payments due hereunder."

¶ 46        By its very terms, paragraph 37 of the lease sets forth the full measure of damages plaintiff will sustain by reason of defendant's abandonment of the rental property, consisting of "the total remaining Rent for the balance of the Lease Term," "other sums agreed to be paid" under the lease (CAM and utility charges), costs and expenses incurred by plaintiff, and reasonable attorney fees. Because plaintiff's damages for defendant's breach are ascertainable and set forth in paragraph 37 of the lease, the "liquidated damages" provision set forth in paragraph 12 is not an enforceable liquidated damages clause but a penalty that we will not enforce. See *Stride*, 132 Ill. App. 3d at 605-06 (where language of lease establishes that damages are ascertainable, provision for double rent payments is unenforceable penalty clause); see also *Chemetco, Inc.*, 311 Ill. App. 3d at 457 (lease provision allowing plaintiff to recover "well in excess of the actual damages suffered by the plaintiff as a result of *** defendant's breach" would be considered a penalty where another provision of lease contained alternative method of computing damages that reflected plaintiff's actual damages).

16

¶ 47    The trial court erroneously calculated plaintiff's damages by including rent at "one and one quarter" times the amount set forth in the lease from February 2020 to April 2023. Using the proper method to calculate plaintiff's damages, we find: (1) plaintiff is entitled to $34,759.16 for the period of February 2020 to July 2020, including attorney fees, and (2) $151,394.43 should be held in trust by plaintiff for amounts due from August 2020 to April 2023. We, therefore, reverse the trial court's July 14, 2020 damage awards and direct the court to enter judgment in favor of plaintiff and against Jacob Cluver in the above amounts.

¶ 48                                CONCLUSION

¶ 49    The judgment of the circuit court of Tazewell County is affirmed in part and reversed in part, and the cause is remanded with instructions.

¶ 50    Affirmed in part and reversed in part; cause remanded.

¶ 51    JUSTICE HOLDRIDGE, specially concurring:

¶ 52    I write separately to expand on the inartful drafting of the lease in this case. First, paragraph 12 of the lease refers to "one and one quarter times" rent for failure to operate in accordance with the lease as "liquidated damages." However, Camp Street argues that this is not a liquidated damages clause. Second, Camp Street suggests that paragraph 37 of the lease provides that the "one and one quarter times" rent is paid in trust, the trust terms include specific provisions for how and when the funds are used, and any excess is returned to Jacob. Thus, Camp Street essentially argues that Jacob is not liable for the "one and one quarter times" rent merely for violating the lease but that the amount is held in trust to cover its damages and any excess will be returned.

¶ 53    I find that the lease is not clear in this regard, especially when coupled with the "liquidated damages" language in paragraph 12. Stated another way, when reading the lease as a whole, it is not clear how the "one and one quarter times" rent is to be treated: as a penalty or deposit.

17

Ambiguous contractual language is generally construed against the drafter of the language. *Sherwood Commons Townhome Owners Ass'n, Inc. v. Dubois*, 2020 IL App (3d) 180561, ¶ 31. As Camp Street drafted the language in the lease, any ambiguities should be construed against it. For the foregoing reasons, the "one and one quarter times" rent term must be viewed as an unenforceable penalty.