2026 IL App (1st) 250772-U
Order filed: March 25, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-25-0772

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JOSEPH KHOSHABE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021 L 63052 |
| | ) | |
| GRAND TRADITIONS, LLC, | ) | Honorable |
| | ) | John Curry, |
| Defendant, Counterplaintiff, and Third-Party | ) | Judge, presiding. |
| Plaintiff-Appellee. | ) | |
| | ) | |
| (Sima Khoshabe Trust, dated September 22, 1995, and | ) | |
| Owners and Non-Record Claimants, | ) | |
| | ) | |
| Third-Party Defendants). | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Judgment in favor of appellee affirmed, where appellant forfeited issue of purported inconsistency between the general verdict and special interrogatory answers returned by the jury and appellant's other arguments are without merit.

¶ 2    Plaintiff and counterdefendant-appellant, Joseph Khoshabe, appeals from a final judgment and an award of attorney fees and costs entered in favor of defendant, counterplaintiff, and third-party plaintiff-appellee, Grand Traditions, LLC ("GT"). On appeal, Khoshabe primarily relies

upon a purported inconsistency between the general verdict and special interrogatory answers returned by the jury. For the following reasons, we affirm.

¶ 3    Khoshabe filed his initial seven-count complaint against GT on June 28, 2021, seeking damages purportedly arising out of a contract between the parties executed on or about October 7, 2019, for the remodeling and construction of an addition to a residential property located in South Barrington, Illinois.

¶ 4    In August 2021, GT responded by filing an answer denying the material allegations of the complaint and affirmative defenses of setoff, failure to mitigate damages, and application of the "acts of god" provision of the contract considering the impact of the COVID-19 pandemic. GT also filed a three-count counterclaim and third-party complaint for foreclosure of a mechanic's lien, breach of contract, and *quantum meruit*. While these counterclaims were also addressed to third-party defendant and purported legal owner of the property at issue, Sima Khoshabe Trust, dated September 22, 1995, this party was never served and claims against it were not further pursued below.

¶ 5    In January 2022, Khoshabe filed the operative amended complaint and answers to GT's affirmative defenses. In the amended complaint, Khoshabe pleaded claims for breach of contract, fraud, violation of the Illinois Home Repair Act (815 ILCS 515/1 (West 2022)), violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2022)), violation of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 (West 2022)), accounting, and negligence. All but the breach of contract and negligence claims were either dismissed or voluntarily withdrawn by Khoshabe prior to trial.

¶ 6    As relevant to this appeal, the amended complaint alleged that the original 2019 contract for the remodel of and addition to the property was for $667,120, with the construction expected

to be completed five to six months after permits for the work were obtained. The contract also required GT to provide Khoshabe with lien waivers "from each and every subcontractor and/or supplier or laborer for any and all of the work and materials provided by them." The amended complaint specifically alleged, *inter alia*, that GT failed to comply with this provision of the contract, and that Khoshabe was damaged as a result and should have been excused from further performance under the contract due to this breach.

¶ 7 GT filed an answer to the amended complaint in July 2022. GT refiled its affirmative defenses and stood on its previously filed counterclaims. The parties thereafter conducted discovery, and this matter proceeded to a jury trial in December 2024.

¶ 8 As relevant to the issues presented on appeal, the parties presented evidence that between December 2019 and August 2020, the parties executed multiple written change orders for additional or modified work on the project, increasing the contract price to $774,826.81. Khoshabe approved of these changes in writing, and Khoshabe paid GT approximately $703,000.00, leaving an unpaid balance of $71,826.81. One of the central issues at trial was exactly what occurred when GT sought a final payment of that amount and Khoshabe refused to pay. The dispute centered around the requirements of section 7(d) of the contract. That section specifically provided:

"**Progress Payments.** The Contract Sum shall be payable to the Builder in staged periodic progress payments ("Progress Payments"), as follows:

\* \* \*

"(d) The aforementioned Construction Payments shall be paid by Owner directly to the Builder. Builder shall submit periodic Payment requests to Owner (each a "Payment Request"). Each Payment Request from the Builder to the Owner shall be based upon the progress of construction of the Home, subject to change as mutually agreed to by Builder

and Owner in a writing signed by Builder and Owner. Each Payment Request shall include (i) work and materials completed as of the date the Payment Request is made and (ii) any deposits required to secure materials. Payment shall be made to Builder from the Owner within five (5) days after receipt by Owner of a Payment Request provided that the Builder shall: (i) have met with the Owner at the site to review improvements constructed in accordance with such Payment Request: and (ii) have provided Owner with lien waivers from each and every subcontractor and/or supplier or laborer for any and all of the work and materials provided by them which relate to any portion of said Payment Request, which lien waiver(s) shall acknowledge a waiver, release and relinquishment of any and all liens or claims, or right of lien or claim fur any labor, work or materials furnished by them through the date of the Payment Request."

¶ 9    Khoshabe presented evidence at trial, primarily through his own testimony, that GT refused to provide the lien waivers applicable to the final work on the project and that it was for that reason he refused to make the final payment. In turn, GT presented evidence—through testimony of Khoshabe, employees of GT, and GT's subcontractors, as well as various written communications between Khoshabe and GT entered into evidence—that it had been the parties' practice throughout the project to meet at the home to review work and then exchange lien waivers and payment. However, when it came to the final payment request, Khoshabe repeatedly refused to meet at the home with GT or make any payment.

¶ 10    After the parties finished presenting the evidence, Khoshabe made an oral motion for a directed verdict on GT's breach of contract counterclaim. That motion was denied, and the parties delivered closing arguments. In their arguments, Khoshabe and GT each essentially argued that it was the other that first breached the contract.

¶ 11　On December 6, 2024, the final day of trial, the jury returned a general verdict against Khoshabe on its breach of contract claim and in favor of GT on its counterclaim and awarded it $69,326.81 in damages. The jury also provided answers to several special interrogatories. The jury was dismissed, and the trial court thereafter entered a final judgment in favor of GT on December 9, 2024. That order included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 12　Thereafter, on January 6, 2025, Khoshabe filed a renewed motion for directed verdict, for judgment notwithstanding the verdict, and/or a new trial. That motion was denied on March 26, 2025. Khoshabe filed a notice of appeal on April 25, 2025.

¶ 13　Subsequently, on June 3, 2025, the trial court granted a motion filed by GT and entered a judgment awarding GT $128,970.50 in attorney fees and $9,095.24 in costs. Khoshabe thereafter sought and was granted leave to amend his notice of appeal to include this judgment as well, and an amended notice of appeal was filed on July 3, 2025.

¶ 14　On appeal, Khoshabe raises several issues with respect to the judgments entered in favor of GT and the denial of some of the motions he filed below. Before continuing to address these in any detail, we note that a number of these arguments fundamentally rely upon Khoshabe's contention that there is an irreconcilable inconsistency between the general verdict returned by the jury in favor of GT and the jury's answer to several of the special interrogatories. In response, GT contends that Khoshabe has forfeited any such argument by failing to raise it before the jury was dismissed below. We agree with GT.

¶ 15　Relevant to this issue is section 2-1108 of the Code of Civil Procedure (735 ILCS 5/2-1108 (West 2024)), which in relevant part provides:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. Within the discretion of the court, the jury may be asked to find specially upon any material question or questions of fact submitted to the jury in writing. Any party may request special interrogatories. *** When any special finding of fact is inconsistent with the general verdict, the court shall direct the jury to further consider its answers and verdict. If, in the discretion of the trial court, the jury is unable to render a general verdict consistent with any special finding, the trial court shall order a new trial."

Pursuant to this mandatory language, it has been recognized that "if a special fact finding is inconsistent with the general verdict, the trial court must direct the jury to further consider its answers and verdict. If, in the court's discretion, it finds that the jury is unable to render a general verdict consistent with any special finding, it must order a new trial." *Kulhanek v. Casper*, 2023 IL App (1st) 221454, ¶ 26. As such, "for the trial court to grant a new trial on this basis, it must address the inconsistency issue while the jury remains empaneled." *Id*.

¶ 16    However, as this court also recognized in *Kulhanek*, "attorneys should also examine the jury's answers for inconsistencies with the verdict before the jury is discharged from the case. If the trial court fails to notice any inconsistency at that time, attorneys should alert the court or risk forfeiting any objection to an inconsistency between the jury's special answers and the general verdict." *Id*. ¶ 27. As such, in that case this court found that the parties forfeited consideration of any claims of inconsistency between the jury's special answers and the general verdict where the trial court did not notice the inconsistency while the jury was empaneled and plaintiffs only raised the issue for the first time in a posttrial motion filed 15 days after the jury rendered its verdict. *Id*.

¶ 17    In support of this finding, the *Kulhanek* decision cited the decision in *Ris v. Advocate Health & Hospitals Corp*., 2023 IL App (3d) 220221-U (because this case was filed after January

1, 2021, we cite it here as it was cited in *Kulhanek*, as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025)). In that case, the court also found any claim of inconsistency between a special interrogatory and a general verdict to be forfeited by the failure to object before the jury was discharged. *Id.* ¶ 67. In support of this conclusion, the *Ris* decision cited several federal decisions interpreting a similar rule of federal civil procedure (Fed. R. Civ. P. 49(b)). *Id.* One of those decisions, *Strauss v. Stratojac Corp.*, 810 F. 2d 679, 683 (7th Cir. 1987) (quoting *Cundiff v. Washburn*, 393 F. 2d 505, 507 (7th Cir. 1968)), provides a succinct rationale for finding forfeiture in such circumstances:

> " 'Any other decision would hamper the just and efficient operation of the *** courts. It would encourage jury-shopping by litigants, permitting them to decide whether to take their chances on resubmitting the verdict and findings to the jury sitting or remain silent thereby allowing the entry of judgment and moving for a new trial before a new jury. It might also encourage the use of special interrogatories as a trial tactic to create the opportunity for such inconsistency and preserve the option for a new trial on grounds of such inconsistency.
>
> In contrast, the rule that objection on grounds of inconsistency is waived by failure to move for resubmission promotes the fair and expeditious correction of error. It requires that the error be corrected in the proceeding in which it is made, by the jury which made it.' "

¶ 18    We agree with these decisions and the rationale behind them. Applying them to the circumstances here, the record shows that Khoshabe did not raise an issue as to any inconsistency between the general verdict and the answers to any of the special interrogatories before the jury

was dismissed on December 6, 2024. Rather, such a claim was not raised until Khoshabe filed his posttrial motion on January 6, 2025. We therefore find this argument to have been forfeited.

¶ 19      We turn next to Khoshabe's assertion that the trial court incorrectly denied his oral motion for a directed verdict as to GT's counterclaim, made at the conclusion of evidence during trial, and his renewed motion for a directed verdict, which was included in his posttrial motion. However, we conclude this claim is not subject to review.

¶ 20      There was a trial on the merits here, such that the trial court's denial of the motions for a directed finding merged into the court's final judgment and those rulings should not be further addressed on appeal. *Taylor v. Board of Education of City of Chicago*, 2014 IL App (1st) 123744, ¶ 32; *Wade v. Rich*, 249 Ill. App. 3d 581, 592 (1993). We therefore now turn to Khoshabe's challenge to the denial of his motion for judgment notwithstanding the verdict ("JNOV").

¶ 21      We initially note that a portion of Khoshabe's argument as to this issue relies upon alleged inconsistencies between the general verdict and the answers to some of the special interrogatories, an argument we have found to be forfeited. Khoshabe also contends that he is entitled to JNOV as to GT's counterclaim for foreclosure of a mechanic's lien. However, the record is clear that this specific counterclaim was never presented to the jury and was simply not placed at issue at trial. What remains to be addressed with respect to this issue on appeal, therefore, is Khoshabe's contention that his motion for JNOV was improperly denied because GT failed to prove all the essential elements of its counterclaim for breach of contract.

¶ 22      A JNOV should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co*., 37 Ill. 2d 494, 510 (1967). Neither the trial court nor this court may enter a JNOV if the evidence

demonstrates a substantial factual dispute, or where the assessment of witness credibility or the determination regarding conflicting evidence is decisive to the outcome. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992); *Vanderhoof v. Berk*, 2015 IL App (1st) 132927, ¶ 59. Furthermore, "[i]n making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of the witnesses." *Donaldson v. Central Illinois Public Service Co*., 199 Ill. 2d 63, 89 (2002). A motion for JNOV presents a question of law that we review *de novo*. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

¶ 23    The essential elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by plaintiff; (3) breach by defendant; and (4) resultant injury to plaintiff. *Van Der Molen v. Washington Mutual Finance, Inc*., 359 Ill. App. 3d 813, 823 (2005). Additionally, the "first-to-breach rule excuses a party's duty to perform under the contract if the other party materially breaches the agreement first. [Citations.] In other words, the first-to-breach rule excuses the injured party from future performance and allows the injured party to pursue its breach of contract claims." *PML Development LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50.

¶ 24    Here, the record reflects that the parties presented materially conflicting evidence regarding the circumstances surrounding the final payment sought by GT and the parties' compliance with the requirements of section 7(d) of the contract.  The credibility of several witnesses was also placed at issue at trial, with a determination as to the credibility of the testimony of those witnesses being central to the resolution of GT's counterclaim for breach of contract. And, the jury was specifically instructed on the first-to-breach rule, and the parties discussed application of that rule in closing arguments as well as the credibility contest among the witnesses presented at trial.

¶ 25    Again, in determining the propriety of a ruling on a motion for JNOV, it is not our place to reweigh this evidence or determine the credibility of the witnesses. As such, and because the evidence is conflicting and does not so overwhelmingly favor Khoshabe such that no contrary verdict based on that evidence could ever stand (*Pedrick*, 37 Ill. 2d at 510), we reject Khoshabe's contention that his motion for JNOV was improperly denied.

¶ 26    Khoshabe next contends that the trial court improperly denied his motion for a new trial. However, once again, his arguments in this regard are all fundamentally premised upon his assertion of inconsistencies between the general verdict and the answers to some of the special interrogatories, an argument we have found to be forfeited. We therefore need not consider this issue any further.

¶ 27    Finally, we address Khoshabe's challenge to the award of attorney fees and costs to GT as a prevailing party. While Khoshabe initially contends that GT was not a prevailing party in this litigation due to inconsistencies between the general verdict and the answers to some of the special interrogatories, we will not further consider that argument for the reasons discussed above. We therefore turn to a discussion of the remainder of Khoshabe's arguments as to this issue. We first consider Khoshabe's assertion that the contract between the parties does not provide for the payment of *costs* to a prevailing party in addition to attorney fees.

¶ 28    As our supreme court has long recognized, Illinois follows the "American rule" which prohibits prevailing parties from recovering their attorney fees from the losing party absent an express statutory or contractual provision. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 64. Accordingly, statutes or contracts which allow for such fees are in derogation of the common law and must be strictly construed. *Id.*; *Powers v. Rockford Stop–N–Go, Inc.*, 326 Ill. App. 3d 511, 515 237 (2001). "That is, we construe the fee-shifting provision 'to mean nothing more—but also

nothing less—than the letter of the text.' " *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 255 (2010) (quoting *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004)).

¶ 29    Here, section 17 of the contract provides: "Owner and Builder shall expend their best efforts to negotiate in good faith the resolution of any claim or dispute arising out of, relating to, any actual or alleged breach of this Contract. If the parties cannot reach agreement and the dispute is submitted to litigation, then the nonprevailing party shall pay the legal fees of the prevailing party." While Khoshabe contends on appeal that this provision does not provide for the payment of costs in addition to attorney fees, he has cited no authority for this argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (Appellant's brief shall include an argument containing the appellant's contentions, the reasons therefor, *citation of the authorities*, and the pages of the record relied on, and points not argued in opening appellate brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing") (Emphasis added.)

¶ 30    Any forfeiture aside, the contractual provision provides for the payment of "legal fees," not solely "attorney fees." We conclude that this language can properly be interpreted to include payment of attorney fees and costs, as this reading would allow the language to mean nothing more, but also nothing less, than the letter of the text. *Bright Horizons*, 403 Ill. App. 3d at 255.

¶ 31    Khoshabe next faults the trial court for its failure to hold an evidentiary hearing on GT's fee petition. However, "trial courts faced with fee petitions are not required to hold evidentiary hearings as a matter of course." *County Line Nurseries & Landscaping, Inc., ex rel. Bankruptcy Trustee v. Glencoe Park Dist*., 2015 IL App (1st) 143776, ¶ 46. And, as GT correctly notes in its brief, the record does not indicate that Khoshabe ever asked for such a hearing below and therefore this issue has been waived. *Id*.

¶ 32    The remainder of Khoshabe's arguments as to the award of fees and costs to GT amount to nothing more than a general citation to general propositions of law (with many of those citations to federal, not Illinois, law) unconnected to other generalized, non-specific claims of excessive billing. Khoshabe does not provide any specific citation to specific fees or costs that should be disallowed.

¶ 33    It is well understood that " '[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " (Internal quotation marks omitted.) *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) (quoting *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995)). Thus, "[w]e will not sift through the record or complete legal research to find support for [an] issue." *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 6. Without any proper argument or legal support, we will, therefore, not further consider this argument.

¶ 34    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.